MARCELLUS O. MARKHAM, plaintiff in error, *vs.* ELIZABETH P. O'CONNOR, defendant in error.

52   183
189US271

52   183
121   220

1. When a mortgagee is present at an auction sale of the property by the mortgagor, and it is announced at the sale by the auctioneer that the title is perfect and clear, or unincumbered, and he fails to make any correction of said announcement, and a purchaser buys under the impression that he is getting an unincumbered title, and takes a deed, and pays his money under such impression, the mortgagee is estopped from setting up his mortgage, even though the mortgage was duly recorded at the time of the sale.

2. Nor is it required that the mortgagee shall have failed to correct the false impression made by such announcement, with any fraudulent intent. It is sufficient, that to permit the mortgage now to be enforced, will operate as a fraud on the purchaser.

Estoppel. Mortgage. Registry. Before Judge HOPKINS. Fulton Superior Court. April Term, 1873.

On the 19th day of July, 1866, William Markham, by deed of warranty, conveyed to Holmes Sells, city lot number sixty-two in the city of Atlanta, comprising one-half acre of ground, fronting on Marietta street, and extending back to Walton street. For the purchase money of this lot, Sells executed to Marcellus O. Markham, the son of the aforesaid William Markham, to whom the latter had given the debt, his two promissory notes, each for the sum of $5,000; one due thirty days thereafter, and the other due on the 25th day of December, 1866. To secure the payment of these two notes, Sells simultaneously executed to said Marcellus O. Markham his mortgage on the same property—reciting in

the mortgage that it was executed to secure the payment of said notes, as the purchase money for said city lot, number sixty-two.    This mortgage was duly recorded in eleven days from its date, to-wit: on the 30th day of July, 1866.    Some short time thereafter, Sells divided the single lot into several lots, moved the house that was on Marietta street back on Walton street, and then resold the half fronting on Walton street, to Marcellus O. Markham for $6,000 00.    Out of this fund, added to other payments, Sells discharged the note for $5,000 00 first falling due, and received from Marcellus a note for $3,000 00, a balance due to Sells on said last sale.    Markham desired this sum of $3,000 00 to be credited on the remaining note for $5,000 00 not then due, but Sells would not agree to that credit.    He afterwards negotiated this latter note of $3,000 00 in bank.    He divided up the remainder of lot sixty-two into four lots, fronting on Marietta street, and sold them at public auction on the 13th day of September, 1866.    At this sale, Patrick O'Connor and his associates purchased two of the lots—gave their notes to Sells for the purchase money, and took his obligation to make a valid title when the notes should be paid.    These notes were negotiated by Sells to Dobbins and others.    When the last note given by Sells to M. O. Markham became due, it was not paid.    Markham proceeded to foreclose his mortgage, and obtained a rule absolute.    An execution issued, and was levied by the sheriff on the property.    Before the day of sale, O'Connor obtained an injunction.    His bill charges, "that at the time said sub-divisions of said half of said city lot were sold, the said Holmes Sells caused proclamation to be made before the sale commenced, to the persons who had assembled on the lots to bid for the same, by George W. Adair, his auctioneer and agent upon that occasion, that the title to the said land was perfectly good, and that the same was unincumbered by lien or otherwise, and that the purchasers would get a good title unincumbered.    That at the time said announcement was made, to the best of your orator's information and belief, Marcellus O. Markham was present—heard the announcement made by

George W. Adair, the said auctioneer for Holmes Sells—knew that your orator, as well as the other bidders, were bidding for said property with the understanding that the titles were good, or that they would get a good title unincumbered to such parcels as they should bid off. That this was the impression produced upon the mind of your orator. Yet the said Marcellus O. Markham did not make known to the bidders or to your orator that he held a mortgage upon the premises, which was outstanding and unsatisfied; which failure of the said Marcellus O. Markham, the mortgagee, your orator charges to be a fraud upon the rights of your orator." The bill prays that said Markham, and the sheriff, be enjoined from selling the portion of property bought by complainant and his associates (all of which he now claims—having paid all the purchase money except $400 00,) and for such other relief as the circumstances may require, etc. Discovery was waived.

The answer of defendant admits that Sells sub-divided the land fronting on Marietta street into four lots, and sold the same at public auction, but says he is informed there were two sales, one of two of the lots in September, 1866, and the other in July, 1867. The defendant is informed that complainant purchased at the first sale, and at that sale defendant thinks he was present, though at first he did not remember he was present; but denies that he heard any such proclamation that the purchaser would get a perfect, unincumbered title, as alleged in complainant's bill, and denies that he had any agency in creating any such understanding or impression on the mind of complainant or other person, or was in complicity or privity with any person who did create such an understanding or impression. He denies that he committed any fraud on complainant. Says Sells was then in good financial condition and report, and it never occurred to him that he, or anybody else, was in danger of suffering loss, or that the title could be doubtful. He states that complainant had notice of the mortgage, before he paid all the purchase money, from William Markham, and that the mortgage itself was duly record-

ed as required by law. He admits the mortgage is entitled to two credits, one of $1,400 00, amount paid by Healey for one of the lots at second sale; and one of $200 00, amount collected from Peck on lumber bill, due by Peck to Sells. The remainder of the note for $5,000 00, secured by said mortgage, the answer insists is justly due, and ought to be collected out of the lots levied on.

On the trial, the deed from William Markham to Sells, the mortgage from Sells to M. O. Markham, the bond for titles from Sells to O'Connor and others, and the mortgage *fi. fa.*, and entries on each, all being exhibits to complainant's bill, were considered in evidence.

The complainant examined George W. Adair, Holmes Sells, Miles G. Dobbins, J. A. Hayden and C. W. Hunnicutt, on the stand, and read the depositions of John J. Thrasher and Thomas Alexander.

GEORGE W. ADAIR testified as follows: "After I had advertised the property, I met Wm. Markham on the streets. I had an impression about this property having been sold by Coe's administrator, and that orphans were interested in it. The property had been sold by the administrator for Confederate money. I had doubts about such titles being good, because of their being Confederate transactions. It was soon after the war, and I did not know how such titles would be held. I met William Markham and satisfied myself on this point. He traced the titles, and said the property had been sold by Judge Hayden as administrator, etc., of Coe. He said nothing about any mortgage, for I never dreamed of such a thing. After I had thus satisfied myself that the titles were correct, I announced that the titles were good as far as I knew, and I invited buyers to come up, as I thought they would get good titles. I announced distinctly that they were good titles, as I had relieved my own mind by talking, as I have said, with William Markham about how it came from Judge Cone. The lots sold well; brought every dollar they were worth. Calvin W. Hunnicutt was bidding, and I followed him with my eye as he moved round, and in this way I saw Marcellus

O. Markham sitting on the steps, and Hunnicutt sat down by him. I did not know when Markham came; saw him for the first time, as stated, when Hunnicutt was bidding. I knew nothing about a mortgage, and I announced nothing about one. I do not know whether Marcellus Markham heard my announcement. I said the *chain* of titles came from old Judge Cone to Coe, and then to William Markham; I was trying to make known the general idea that the titles came through a good crowd, and was a clear claim. As I said at first, there was some question about the validity of titles where the payments had been made in Confederate money; I wished to relieve the crowd of any such impression about this property. There was a kind of doubt on all of us, as I said, about Confederate titles; I knew nothing about any mortgages, or incumbrances, or liens; I said everything I could to induce everybody to believe the titles were good; it never occurred to me that it was incumbered, coming as it did from these persons. At that time Sells was good; he was flush; he had a good deal of property at the time. If I had been a bidder, and known of a mortgage, I should have wanted it cleared up, though I should have thought that he could have cleared up the mortgage, as he was rich at the time. I always make statement about titles at the beginning of a sale, and then 'inject' it through the sale."

HOLMES SELLS testified as follows: "I saw Marcellus Markham at the sale, and before the sale. I talked with Marcellus before and after the sale; I don't remember what we talked about. He seemed anxious that the property should bring a good price. There was no understanding between us what should be done with the proceeds; I had no agreement with him at all. He did not consent or object to the sale. He was there all the time. He said nothing for or against the sale—nothing to me, at least. No doubt he thought it good property; all thought so. I dont't know of anything being said by any one about mortgages or liens; if there had been anything said about it, I should have been likely to have heard it. I possessed property, and was solvent then; I have

failed since that time, and am now insolvent. I don't remember that Marcellus Markham and myself had any conversation about the sale. He knew that persons were bidding upon the property, but I do not know that he knew they were bidding with the expectation of getting good titles. I don't remember that I heard the announcement made by Colonel Adair about the property."

*Cross-examined:* "My purpose in that sale was certainly honest, and I had no intention to defraud any one; I don't think Marcellus Markham had either. I don't know whether I authorized Adair to make the statement he made, but it was understood that I would make a good title, and probably a warranty title. I have no idea that 'Marcellus Markham wished to entrap any purchaser; I did not intend to entrap any one. I had no doubt I should be able to make a good title. If I had been solvent when the notes secured by the mortgage became due, I should have paid them off. All of this trouble grows out of my insolvency. I did not hear Marcellus Markham say anything about the mortgage; I had only an ordinary conversation with him. I did not hear him encouraging bidders. I expected to pay the mortgage, as I then stood, and certainly expected to make a good title; I did sell the purchaser a good title so far as I knew at the time. I had not a doubt about lifting the debt; the mortgage was for the purchase money that I owed on the property. If I had heard Adair tell the purchasers that they would get good titles, I should have thought it was true. I never thought anything about the mortgage coming in the way at all. There was no agreement as to what was to be done with the proceeds; nothing was said by either of us about that."

M. G. Dobbins testified as follows: "I got some notes from Sells, on O'Connor, before they were due. Sells was considered good in those days; I considered him good at the time. I treated him as I did others under the rules of the bank. I considered his obligations good."

J. A. Hayden testified as follows: "Was at the sale. Marcellus Markham was there. Adair announced that a

Markham *vs.* O'Connor.

man would get a perfect title if he bought the property. I don't think there was anything said about incumbrances. I should have heard it if there was. Marcellus was at the sale; don't know when he came on the grounds."

*Cross-examined.*—"Sells was considered rich. I considered him worth from $20,000 to $40,000 00. From report, he was considered good at the time. I bid on the property; I was not influenced by Marcellus Markham's being there. His presence made no difference to me, at all."

P. O'CONNOR testified as follows: "Is complainant. Was not at the sale. Partner, McGuire, was there. Witness paid the notes. Has only bond for titles. Not at the sale, and took no action on account of Marcellus Markham's presence there."

CALVIN W. HUNNICUTT testified as follows: "Was purchaser of one of the lots. Was at the sale, and bid it off myself. I saw Marcellus Markham there. I and Tom Alexander were sitting on the steps together. Adair was crying the property at the time. Marcellus Markham was sitting on the steps above me. He touched me on the shoulder, and said it is good property, and is worth more money than it is bringing. Adair went through the history of the property, which I knew to be correct, as I had known the property from 1848. I knew who settled it, who built the steps, etc., but I did not know of any mortgage on the property. Adair stated how the titles had passed, and that there was no shadow of doubt that the titles were good. He referred to those through whom the titles came, and said that Judge Hayden, William Markham and Dr. Sells were present, pointing to them, and that the titles came through them. I have no doubt but that every man who could hear, did hear Adair's statements. I recollect it very distinctly. All the lots were sold under the announcement."

*Cross-examined.*—"I did not see Marcellus Markham go away. I am not certain he staid or went away. I bought the property on my own judgment of its value, and not from what Marcellus Markham said. Dr. Sells was good at that time as far as I know. I had no doubt but that Sells' titles

were good.   I took a warranty title from him.   The sale was upon different payments."

· JOHN J. THRASHER testified as follows: "I was present at the sale alluded to.   As well as I now remember, George W. Adair said that the titles were good.   Adair made the impression on my mind that the titles were perfect.   The statement was made so that all the bidders or other persons present could have heard it.   It was made before the sale commenced. I cannot say whether Marcellus O. Markham was present at the first statement made by Adair, but Adair made about the same statement at the sale of the different divisions of the lots, and Marcellus O. Markham was there during the sale, for I had a conversation with him.   The lot bought by complainant was about the fourth one sold.   He did not contradict said statement.   On the contrary, my impression is that I had some doubt about the property being paid for, and called the defendant to me, and I think I asked him if the land was paid for, and the impression left on my mind was that everything would be made right; he was near enough to have heard the statement.   He gave no notice of any lien.   He must have known the property was selling as the property of Sells.   I think there were two sales took place in connection with this property of Sells', on Marietta street.   I was present at both.   I cannot say that Markham was present at both; I don't remember seeing him at but one.   Adair did make the same announcement at each sale; he stated that the title would be made perfect when the purchase money was paid, and I don't remember his saying anything about liens or incumbrances.   Sells was considered well off when the sale took place.   The announcement of Adair referred to a perfect title, by which we understood that there were no difficulties about the title, or lien on the property.   That is what ordinary people mean by a perfect title."

THOMAS ALEXANDER testified as follows: "I was present at the sale alluded to.   Adair said to those present that the titles were good, and remarked that Sells and the one from whom he had bought the lot, to-wit: M. O. Markham, were

present at the time he was talking. The statement of said Adair was made so that all the bidders present could hear it, and it was before the sale commenced. Said M. O. Markham was present at the time the auctioneer made the statement, and the auctioneer referred to his presence, and also to that of Dr. Sells. He did not contradict the statement; he was near enough to have heard it. He gave no notice of any lien on the property. He knew it was being purchased as the property of Holmes Sells. Marcellus O. Markham was present encouraging the sale, and gave no notice of any claims he had upon it. I saw Markham present; he was there before the sale commenced, and remained until it closed, in hearing of the auctioneer. I think two or three lots were sold, and then the sale was stopped by Sells. I don't know when the other sale took place; I was not present except at the one alluded to ; can't remember the day of the week or month. He (Adair) stated at the first sale there was no encumbrance on the property, and I was not present at the others. Dr. Sells was considered good at that time—not wealthy."

The court charged the jury: "If Adair, as Sells' agent, announced that the title was unincumbered, or was clear, good and perfect, and defendant was present when the announcement was made, and complainant, or those interested with him in the purchase, bid on the property and became the purchaser at the sale, with the understanding that the title was unincumbered, or was clear, good and perfect, and defendant, Markham, heard the announcement of Adair, and did not correct the impression made by it, and did not make known the existence of his lien, such conduct would amount to a fraud, and he would be prevented from setting up his mortgage lien against the purchaser."

To this charge defendant excepted.

The court also charged the jury: "It is not meant by this that defendant, Markham, should have done any particular act. If the circumstances were such as called upon him to make known his lien, if he knew that complainant was purchasing with the impression produced by the alleged announce-

ment of Adair, and he encouraged or countenanced the sale, or remained silent and failed to give notice of or make known his lien, he cannot be '*heard*' to set it up against complainant. The question is, whether such impression was made upon the mind of the purchaser, or whether defendant, Markham, by any act or by his silence, upon a reasonable construction, gave countenance to the sale, or assented to it, and caused or permitted the purchase to be made under the impression made by the announcement."

To this charge defendant excepted.

The counsel for defendant requested the court to charge the jury, "that fraud, or no fraud, is the material fact in issue in this case."

The court refused so to charge, and the defendant excepted.

The counsel for defendant also requested the court to charge the jury, "that the burden of proving fraud in this case is on the complainant, and unless the complainant has furnished evidence which satisfies the jury that the defendant was guilty of fraud, they must find for the defendant."

The court refused to give this charge, and defendant excepted.

The counsel for the defendant also requested the court to charge the jury, "that the presence and silence of Markham at the sale are not, alone, sufficient to estop Markham from asserting his mortgage lien, but the jury must go further and be satisfied from the evidence that such presence and silence operated a fraud on complainant, in the light of the facts as they then existed."

The court refused to give this charge, and defendant excepted.

The jury returned a verdict perpetually enjoining the collection of the mortgage.

The defendant moved for a new trial on all the charges and refusals to charge, as above set forth, and also on the ground that the verdict was contrary to law and evidence, and decidedly and strongly against the weight of evidence.

The new trial was refused, and defendant excepted.

B. H. HILL & SON; JULIUS L. BROWN, for plaintiff in error.

1st. Estoppels are not favored by the courts: Code of Georgia, section 3753; 11 Georgia, 271.

2d. Estoppels are based upon *fraud*, and to create them five things must concur: Statements or admissions must be made, or acts done: 13 Georgia, 492 and cases cited; 20 *Ibid.*, 600; 3 Hill, N. Y., 222; 5 Denio, 157; 18 Com., 138; 6 Ad. and El., 469; 14 Cal., 280; 2 Vern, 554; 19 Wend, 563; 1 Peere Wms., 394; 19 Alabama, 121; 9 Michigan, 131; 4 Jones' Eq., 54; 28 Me., 525. Mere silence will not be enough; there must be something positive said or done: 31 Penn. St., 331; 16 Penn. St. R., 364; 3 Watts, 240; 7 Barr, 233; 2 Rawle, 89; 6 Cush., 215. There must be an intention to deceive, or such gross negligence as amounts to fraud: 17 Georgia, 447; 5 Hill, 157: 8 Wend., 483; 17 Ver., 449; 18 Conn., 444; 3 Strob. L., 367; 3 Hill, 222; 25 Conn., 118; 21 *Ibid.*, 451; 29 *Ibid.*, 109; 8 Barb., 102; 31 Penn. St., 331; 41 N. H., 465. The purchaser must have been influenced to act by the statement so made, or the act done. He must have acted upon this, and not upon his own judgment: Code, section 2634; 30 Georgia, 722; 29 *Ibid.*, 312; 17 *Ibid.*, 449; 515; 1 Seld., 401; 3 Hill, 222-5; 5 Denio, 157; 8 Barb., 102; 21 Conn., 451; 25 *Ibid.*, 118; 14 Cal., 280; 6 Ga., 458; 3 Strob. L., 367; 9 Ga., 23; 12 *Ibid.*, 53; 13 *Ibid.*, 516; 20 *Ibid.*, 517; 45 *Ibid.*, 214. He must not only have been ignorant of Markham's mortgage, but he must also have been ignorant of the means of knowing it: 14 Cal., 280; 16 Penn. St., 363-4; 31 *Ibid.*, 331; 17 S. & R., 383; 3 Watts, 240; 7 *Ibid.*, 401; 20 Pick, 193; 17 Md., 212; 1 Gilb., 302; 12 B. Monroe, 259; 43 Penn. St., 170; 13 Wallace, 379. Silence, alone, only estops in cases of secret liens, trusts, and sales of personal property, where there is no record or means of knowing by the purchaser: 20 Pick, 193; 17 Md., 211; 1 Gilb., 502; 12 B. Monroe, 259; 3 Story, 183. Markham having recorded his mortgage had the right

to presume that every bidder at the sale had notice of it, and knew of it, else record notice amounts to nothing: Code, sec. 1960; 27 Georgia, 205; 7 Gilb., 354; 1 John. Ch., 297; 16 Penn. St., 364; 31 *Ibid.*, 335; 8 Peters, 30; 1 Hilliard on Mortgages, (3d edition) 308, 641, 642; 4 John. Ch. 216, 221; 9 N. H., 337; 5 Humph., 26; Story's Equity Pleadings, section 403; 2 Cow., 246; 2 Black, 372, 389. And lastly, the purchaser must now be injured; must be in a worse condition than before he acted upon the statements made, by allowing the acts or statements to be disproved: 17 Georgia, 452; 3 Hill, 222; 31 Penn. St., 331; 14 Cal., 280. It was not Markham's duty to speak. He had recorded his mortgage. No one bid any more by his being there than if he had been away. O'Connor was not there, and Hunnicutt said he bid on his own judgment. No confidence, whatever, was placed in Markham by O'Connor: Code, sections 2635, 3173; 40 Georgia, 184.

3d. The burden of proof is upon O'Connor to make out affirmatively each and every of the above elements: 29 Georgia, 312; 3 Hill, N. Y., 226; 31 Penn. St., 335; 10 Barr, 531; 7 Gilb., 354.

4th. Interests concerning lands cannot in Georgia pass by estoppel: Code, section 1930; 27 Georgia, 187; 18 *Ibid.*, 353; 9 Ired., 163.

5th. Registration laws are a repeal of the doctrine of estoppel, so far as lands are concerned: 18 Georgia, 182.

6th. There can be no fraud, constructive, where there is constructive notice: 2 John. Reps., 509; 7 Gilb., 334; 4 John. Ch., 65.

7th. Fraud or no fraud, was the material issue involved here. Where there is no fraud there can be no estoppel: Markham *vs.* Hunnicutt, 43 Georgia, 449; 8 Cow., 417, 435.

8th. Fraud is a question of fact for the jury to pass on: Merriel Littleton's case, 10 Coke, 56; 2 Bibb, 419; 8 Cow., 409, 417, 419, 423, 435; 38 Georgia, 216; 2 N. H., 17; 1 Hawks, 320, 342; 2 Wm., Bl., 702; 5 Taunt., 224; 1 Haywood, 109; 7 T. R., 68; 6 Hill, 433-6; 8 Yerg., 420; 1

Atk., 167; 4 Pet., 150; 7 Mass., 117; 1 *Ibid.*, 163; 1 Wend., 611; 4 *Ibid.*, 303; 2 Bos. and Pul., 59; 1 Bay, 174; 25 Georgia, 271, 380; 2 Met., 99, 105.

L. J. GARTRELL; COLLIER, MYNATT & COLLIER; JACKSON & CLARKE, for defendant.

1st. This case is covered by the decision in Markham *vs.* Hunnicutt, 43 Ga. R., 449. See, also, Erwin *vs.* Lowry, 7 Howard, 183.

2d. Patterson *vs.* Esterling & McBain, 27 Ga. R., 205, cited in Brown *vs.* Tucker, 47 Ga. R., 486, presents a statement of facts widely different from this case.

In Hill *et al. vs.* Essley *et al.*, 31 Pa., 331, actual notice was given. Decision based on peculiar state of facts.

3d. Intention to perpetuate fraud unnecessary to constitute estoppel: Rice *vs.* Bunce, 49 Mo., 231; Mason *vs.* Williams, 66 N. C., 564; Vilas *vs.* Mason, 25 Wis., 310; Code, sec. 2634, *et seq.;* Taylor *vs.* Cole, 4 Munf., 351.

4th. Distinction between silence and action as to fraud: Code, sec. 2966; Knouff *vs.* Thompson, 16 Pa., 364.

5th. The entire charge is not given. Presuming that to have been correct, the charge as given, and refusals to charge, are not necessarily erroneous.

6th. The first request to charge enunciates a principle unknown to the law. Fraud is not an isolated fact; it is rather the resultant of facts. The same remark is applicable to the second and third requests.

McCAY, Judge.

1. So far as this case turns on the evidence, we do not, under the rule we have so often announced, undertake to pass upon it. The statements of the witnesses are conflicting, and it is the province of the jury to determine between them. That the weight of the proof may be against the verdict, does not, if the judge below has refused, justify this court in disturbing it. There is a good deal of evidence supporting the verdict, and if the charge was right, and the refusal to

charge as requested, proper, the verdict ought to stand.   The charge, as given, was in substance as follows : That if Markham was present at the sale, if it was announced by the auctioneer that the title was perfect, and clear or unincumbered, and he (Markham) failed to make any correction of said announcement, and O'Connor bought under the impression that he was getting an unincumbered title, and took a deed, and paid his money under such impression, Markham is estopped from setting up his mortgage as to O'Connor, even though the mortgage was duly recorded at the time of the sale.  Was this charge right?  Very certainly, there was evidence to support it.  Several of the witnesses testify almost in the words of the charge as to the character of the announcement, and though others do not give exactly the same version of it, yet if there was any evidence putting the terms of the announcement as strong as it is put in the charge, that will justify the charge.  The whole charge is not set forth in the record, but we must assume that all of it that is claimed to be error is here.  We assume, therefore, that the judge told the jury that the converse of the proposition stated was true. That if the facts proven failed to come up to the charge in any of the particulars stated, as to the presence of Markham, as to the character of the announcement, as to his failure to correct it, and as to the belief and action of the purchaser, then Markham would not be estopped.  At last, therefore, the legal question in the charge resolves itself into this : Is a mortgagee, who has his mortgage duly recorded, if he stand by at a public sale of the property, hear a public announcement that the purchaser will get an unincumbered title, and say nothing, estopped from setting up his mortgage against one who buys at such sale, and pays his money under the impression that he is getting a good and unincumbered title? Our Code, in express terms, defines constructive fraud to consist in any act of *omission* or commission, contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience, and operates to the injury of another.   The last clause of the section adds, that the latter—

Markham *vs.* O'Connor.

constructive fraud—may be consistent with innocence: Code, sec. 3173. The only difference between this case and the case of *Markham vs. Hunnicutt,* 43 *Georgia,* is that then Markham *said* it was good property. *That* was an act of commission; this is an act of omission. Section 2966 of the Code puts acts of omission, where it is one's duty to interfere, on the same footing as acts of commission. It is in these words :

"A fraud may be committed by acts as well as words; and one who *silently* stands by and permits another to buy his property without disclosing his title, is guilty of such a fraud as estops him from subsequently setting up such title against such purchaser." This section of the Code is not only a condensed exposition of the law as it exists, but is the deduction of enlightened reason and justice, upon the facts supposed. Nobody would for a moment hesitate to say that if A, being about to buy an estate, should inquire of B whether it was unincumbered, and B should reply that it was, that B would be estopped ever afterwards to set up an incumbrance to the injury of A. Nor is the estoppel less strong on principles of justice and equity, if the fact be that B stand by and say nothing, when another, in his presence and hearing, asserts that property about to be sold is the property of the seller. The case, then, is within that other familiar rule of evidence, as expressed by the Code, section 3790, that "acquiescence or silence, when the circumstances require an answer or denial, or other conduct, may amount to an admission"—a principle founded in common sense and common honesty, and administered day by day in courts of justice, not only in settling questions of property, but in deciding upon matters involving liberty and life. Was it Mr. Markham's "legal or equitable" duty to have spoken, under the circumstances and announcements put by the judge, and as detailed by at least *some* of the witnesses? Was it contrary to good conscience, supposing it was *then* his intent to insist upon his mortgage, to keep silence? Had he a right to consider that he had done enough when he had put his mortgage upon record? Very clearly, under our law, (Code, 2966,) if one stand silently by

and permit another to purchase his *property* from a third person without disclosing his *title*, it will not be a reply to say *his title* was upon record.   At any rate, the broad language of the Code, section 2966, has got no such qualification.   Why should the fact that his interest in the premises is as a mortgagee and not as owner make any difference?   I take it that the authorities, though it must be admitted that they are not in harmony, may in the main be harmonized, if we consider the principle on which the doctrine is based.   They all go on the idea that it is a man's equitable duty to interfere by the assertion of his right when he sees some one about to act upon the truth of a denial of that right.   In the case where one, in the presence of the true owner, and with his knowledge, sets up a title to property and sells it to another, there is a direct denial of the true owner's right.   The *sale*, without more, is antagonistic to the *title* of the true owner.   And if he stand silently by and permit the sale without announcing his right, he is estopped.   This I think is the uniform current of the authorities: Kerr on Fraud and Mistake, 126; 5 Min., 530; 19 Wend., 557; 5 Leigh, 1; 2 Ala, 514; 34 Ver., 598; 1 John's Chancery, 344; 6 *Ibid.*, 268; 7 Watts, 394; 7 *Ibid.*, 163. But when the right set up is only a lien or incumbrance, the *simple sale* of the *title* is not inconsistent with the lien; mere silence, in the presence of such an act, will not estop; one is not bound upon all occasions to give warning to incautious people.   He has a right to assume, *if nothing appear to the contrary*, that the purchaser has been informed of the lien, has examined the record, and that the sale and purchase are in view of the truth of the case.   But suppose more is done than a mere sale; suppose, as is the case put by the judge, it is evident from the facts that the sale is under an announcement directly in the teeth of the mortgagee's claim.   Is it not just as much his duty to prevent the fraud as in the case of an assertion of title adverse to his title.   Had this sale taken place with no announcements except that Sells was the true owner, there would have been nothing in this antagonistic to the mortgage, and Markham might well rest upon his record, tak-

ing it for granted that the seller was acting in good faith, and that the buyer had examined the record and knew of the mortgage. But when it was (if it was) announced that the property was to go to the purchaser free from incumbrance, " clear and free from incumbrance," was not this an announcement in the teeth of Markham's claim, supposing he then intended that his lien should continue. If Sells did have it announced that the property was free from incumbrance, and it was not, he was, under our law, guilty of a crime. For it is a crime in this state "if one, in the sale of real or personal property, shall defraud another by falsely representing that it is not subject to any lien or mortgage, knowing the same to be subject:" Code, sec. 4599. Had not the bystanders in this case, even supposing that every one of them had heard of the mortgage, a right to suppose that Sells was not committing a crime ? Was it not a fraud if Markham stood by and heard such announcement and kept still ? Was it not a breach of his legal and equitable duty and contrary to good conscience to stand by and permit, not only his neighbor to be defrauded, but a crime to be committed, he *knowing what was going on,* and able, by a mere word of his, to prevent it ? The crime and the fraud in the case would be the sale by Sells, under the announcement that the purchaser would buy the property free from incumbrance, he *knowing to the contrary.* If Markham and Sells did, at that time, know that the purchaser would not get the property free from incumbrance, then Sells was guilty of a crime, and Markham, by his silence, put it in his power to commit that crime. Assuming that Mr. Markham did then intend to insist on his mortgage, even after the property was sold, we think he was guilty of an omission to perform a legal and equitable duty which the principles of good conscience cast upon him, to the hurt of O'Connor ; and this is true, though he may have intended no wrong. We do not think, therefore, there was error in the charge.

2. Was there error in the refusal to charge? The request was, in substance, that in order to find against the mortgage, the jury must be satisfied that Markham intended by his

silence to commit a fraud.   It has been argued eloquently and strongly that fraud is always a question of fact and intent, and must necessarily be a matter for the determination of a jury, and that the refusal of this request was a virtual withdrawal of the question of fraud, and especially of the intent of Markham, from the jury.   This line of argument forgets the distinction between actual and constructive fraud, so pertinently and concisely put by our Code, section 3173.   The latter, as the Code says, " may be consistent with innocence."   A man may be guilty of it who did not think he was doing wrong. The fraud in this case, if there be fraud, is the very kind of fraud which the Code says may be consistent with innocence, to-wit: constructive fraud.   Mr. Markham may not have intended any wrong, he may not have known that it was his equitable duty to prevent Sells from defrauding his neighbor, and that he had no right to stand by and see O'Connor buy under an announcement that he would get the property free from incumbrance, when he knew there was an incumbrance.   Or it may be that Mr. Markham had faith in Sells, and expected to have his mortgage paid out of the purchase money.   In either event he would have intended no fraud, and yet he would be just as much estopped as if he had acted with a deliberate intent to commit a fraud.   It would be a constructive fraud, a fraud in law, though the party was innocent.   The request, therefore, was calculated to mislead the jury.   The true doctrine was put in the charge as given. Markham, under the circumstances as supposed, would be estopped, not because he was guilty of an intended fraud at the time of the act, but because it would be a fraud, if, acting as he did, he should *now* have the benefit of the mortgage, assuming that the announcement was made, as some of the witnesses say, that the property was sold clear and free from incumbrances.   We think it was Mr. Markham's duty, if he intended to insist on his mortgage, to let the truth be known, either at the bidding, or to notify the purchaser before the title was made, or the notes given, or money paid.   If he failed to do any of these things, we do not say that he was

guilty of a fraud in not doing so. But the law, in our judgment, is that if he failed, as stated, it would be a fraud to set up his mortgage *now;* that he is estopped; that the law holds him to the implied admission he then made, either that his mortgage was settled, or that there was some arrangement between him and Sells by which he would get his money out of the proceeds of the sale. He may have intended no wrong at the time. It is the setting up of his mortgage now that is wrong. Hence, we think the request was properly refused.

Judgment affirmed.