S09A0695. BYERS et al. v. McGUIRE PROPERTIES, INC. et al.

(679 SE2d 1)

CARLEY, Justice.

In January 2000, McGuire Properties, Inc. (McGuire) and its president, George Nemchik, assisted Portfolio Homes Development Company, LLC (PHDC), which had been formed by James O. Sissine, Jr., in obtaining a construction loan from First Capital Bank for development of a 12-lot luxury home subdivision owned by PHDC. McGuire served as manager of PHDC, Nemchik personally guaranteed the loan, and PHDC executed security deeds naming as grantees First Capital and Nemchik. In January 2002, David R. Byers and Sharon L. Byers (Byers) made a lot deposit and, on March 14, 2002, entered into a contract for the purchase of Lot 6 with Portfolio Homes, Inc., which was a separate corporation from PHDC.

On April 5, 2002, McGuire and Nemchik entered into an agreement with PHDC and Sissine to end their business relationship. The agreement provided, among other things, that Nemchik would be released from his guaranty in exchange for cancellation of his security deed and that McGuire's management fee would be evidenced by a promissory note in the amount of $704,000 and secured by a new security deed. That security deed was properly filed for record in Fulton County on April 29, 2002 and, along with three other prior security deeds, encumbered several lots including Lot 6. The McGuire security deed provided that, unless PHDC was in default, McGuire would release lots from the security deed as they were sold, so long as "(x) the proceeds of sale are applied to the senior secured loans . . . and (y) such lots are being simultaneously released by such lenders." In May 2002, Byers entered into a contract with

PHDC for the purchase of Lot 6. That property was conveyed to Byers at a closing on May 10, 2002. The total purchase price was $695,000, $69,500 of which were previous deposits retained by PHDC and $620,000 of which was paid to First Capital. Byers borrowed $1,530,000 for both the lot purchase and construction of a house from SunTrust Bank and executed a security deed which was subsequently assigned to SunTrust Mortgage, Inc. (SunTrust). Except for McGuire, the holders of all prior security deeds, including First Capital, executed quitclaim deeds releasing Lot 6.

At the time of closing, neither the law firm handling the closing nor the independent title examiner had discovered the McGuire security deed, and neither Byers nor SunTrust Bank were informed of its existence. Sissine executed an affidavit stating that there were no unpaid or unsatisfied security deeds other than those listed in the "Title Commitment." The McGuire security deed was not indexed in the Fulton County records until June 26, 2002 due to a lengthy delay between filing and indexing in that county. Byers completed construction of a house on Lot 6. After PHDC declared bankruptcy in March 2003, McGuire began in July 2003 to advertise Lot 6 for foreclosure pursuant to the power of sale contained in its security deed.

Byers and SunTrust (Appellants) brought suit against McGuire and Nemchik (Appellees) and others, seeking several types of relief, including cancellation of the McGuire security deed based upon alleged fraud, a decree to quiet title, equitable subrogation, and a temporary restraining order to prevent McGuire from proceeding with the foreclosure, the latter of which was granted by a consent order. Appellees answered, and McGuire also counterclaimed, seeking a quiet title decree and other relief. On cross-motions for summary judgment, the trial court entered an extensive order granting summary judgment in favor of Appellees as to the complaint and in favor of McGuire on its quiet title counterclaim. Appellants appealed from this order to the Court of Appeals, which transferred the case to this Court. See *Hunstein v. Fiksman*, 279 Ga. 559, 560 (615 SE2d 526) (2005) (quiet title). Compare *Hayes v. EMC Mortgage Corp.*, 296 Ga. App. 709 (675 SE2d 594) (2009) (involving only equitable subrogation and not a quiet title claim). We will first address Appellants' contentions regarding the validity and enforceability of the McGuire security deed and will then address the assertion that the SunTrust security deed has priority over McGuire's by virtue of equitable subrogation.

1. [I]n the absence of fraud, a deed which, on its face, complies with all statutory requirements is entitled to be recorded, and once accepted and filed with the clerk of court

for record, provides constructive notice to the world of its existence. . . . [Appellants are] in no better position because [they] closed on [the] property after the [McGuire security] deed was filed with the clerk of court, but before the deed was indexed. . . . " '(A) deed takes effect, as against the interests of third persons without notice, from the time it is "filed for record in the clerk's office; . . ." (A)ll that is required of the grantee and all that he can do is to file his deed for record.' " [Cit.]

*Leeds Bldg. Products v. Sears Mortgage Corp.*, 267 Ga. 300, 302 (1), (2) (477 SE2d 565) (1996). However, Appellants contend that McGuire is not protected by having recorded its security deed prior to Byers' bona fide purchase of Lot 6 for value, because the record contains evidence of fraud by Appellees which brings this case within the express exception to the holding of *Leeds*. Appellants rely on evidence that, after Appellees knew that PHDC was having serious financial difficulties, they took the security deed when the lot was already under contract without notifying the purchasers, waited until shortly before the closing to file the security deed when the delay in indexing made it impossible for it to be discovered in a title examination, confirmed the payout to First Capital after the closing, and waited until the house was built before threatening to foreclose on one lot for the entire debt. Appellants argue that this evidence shows at least constructive fraud or a fraud by silence which pursuant to OCGA § 51-6-4 (b) equitably estops Appellees from claiming any interest in Lot 6.

"Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." OCGA § 23-2-51 (b). OCGA § 51-6-4 "puts acts of omission, where it is one's duty to interfere, on the same footing as acts of commission." *Markham v. O'Connor*, 52 Ga. 183, 197 (1) (1874). "One who silently stands by and permits another to purchase his property, without disclosing his title, is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." OCGA § 51-6-4 (b). Accordingly,

[i]n the case where one, in the presence of the true owner, and with his knowledge, sets up a title to property and sells it to another, there is a direct denial of the true owner's right. The sale, without more, is antagonistic to the title of the true owner. And if he stand silently by and permit the sale without announcing his right, he is estopped. . . . But when the right set up is only a lien or incumbrance, the

> simple sale of the title is not inconsistent with the lien; mere silence, in the presence of such an act, will not estop; one is not bound upon all occasions to give warning to incautious people.

*Markham v. O'Connor*, supra at 198 (1). Thus, even if Appellees knew at all times that PHDC was in financial trouble and that Byers would soon be purchasing Lot 6 despite the failure of PHDC as owner to execute the March 14 contract, that knowledge alone would hardly estop McGuire from claiming an interest in that lot pursuant to its security deed. Appellees had "a right to assume, if nothing appear to the contrary, that the purchaser[s] [have] been informed of the lien, [have] examined the record, and that the sale and purchase are in view of the truth of the case." *Markham v. O'Connor*, supra. Compare *Shellnut v. Shellnut*, 188 Ga. 306, 309 (3) (3 SE2d 900) (1939) (finding that security deed was fraudulent supported by evidence that grantee knew that vendee had already fully paid the purchase money and become entitled to conveyance of the property). Before an equitable estoppel can arise, "there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." OCGA § 24-4-27. Citing *Markham* and other authorities, the Supreme Court of the United States explained them as recognizing

> a distinction between mere silence and a deceptive silence accompanied by an intention to defraud, which amounts to a positive beguilement. [Cits.] . . . No duty to speak arises from the mere fact that a man is aware that another may take an action prejudicial to himself if the real facts are not disclosed. [Cit.]

*Wiser v. Lawler*, 189 U. S. 260, 271 (23 SC 624, 47 LE 802) (1903).

"Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission." OCGA § 24-3-36. Thus,

> [w]hen a mortgagee is present at an auction sale of the property by the mortgagor, and it is announced at the sale by the auctioneer that the title is perfect and clear, or unincumbered, and he fails to make any correction of said announcement, and a purchaser buys under the impression that he is getting an unincumbered title, and takes a deed, and pays his money under such impression, the mortgagee is estopped from setting up his mortgage, even though the mortgage was duly recorded at the time of the sale.

*Markham v. O'Connor*, supra at 183 (1). However, Appellees were not present at the closing, signed none of the closing papers, and did not speak to Byers before or during the closing. Thus, Appellees, like Byers, had the right to assume that PHDC and Sissine would not commit the crime set forth in OCGA § 44-14-12 of false representation as to the existence of a lien. *Markham v. O'Connor*, supra at 199 (1).

Moreover, OCGA § 51-6-4 (b) "is inapplicable . . . where [the purchaser] relied upon his own investigation or was not shown to have placed any reliance on the statement, action or inaction of the one claimed to be estopped. [Cits.]" *Anderson v. Manning*, 221 Ga. 421, 423-424 (144 SE2d 772) (1965). See also *Wiser v. Lawler*, supra at 270 ("to constitute an estoppel, either by express representation or by silence, there must not only be a duty to speak, but the purchase must have been made in reliance upon the conduct of the party sought to be estopped"). Construed in the light most favorable to Appellants, the evidence shows that they relied upon the investigation of the closing attorneys and upon a misrepresentation by Sissine, but the evidence fails to show that Appellants relied upon any words or conduct of Appellees.

Accordingly, we do not find any evidence of constructive fraud or of fraud by silence on the part of McGuire or Nemchik as its agent which would require the denial of their motions for summary judgment.

2. Appellants further contend that the McGuire security deed constituted a fraudulent conveyance under subsections (2) and (3) of former OCGA § 18-2-22. That statute "was repealed on July 1, 2002, when Georgia enacted the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq., but this repeal did not extinguish causes of action that arose under OCGA § 18-2-22 before that date. [Cit.]" *Gerschick v. Pounds*, 281 Ga. App. 531, 532 (1) (a), fn. 8 (636 SE2d 663) (2006). In relevant part, former OCGA § 18-2-22 provided as follows:

> The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void: . . . (2) Every conveyance of real or personal estate . . . had or made with intention to delay or defraud creditors, where such intention is known to the taking party; a bona fide transaction on a valuable consideration, where the taking party is without notice or ground for reasonable suspicion of said intent of the debtor, shall be valid; and (3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance.

"A party relying on ... subsection [(2)] must establish two elements: (1) the requisite intent of the grantor and (2) grantee's knowledge of grantor's intent. [Cit.]" *Stokes v. McRae*, 247 Ga. 658, 659 (2) (278 SE2d 393) (1981). " 'The second element may be established either by proof of actual knowledge or by proof of circumstances sufficient to put (the taking party) on inquiry. (Cit.)' [Cit.]" *Kesler v. Veal*, 257 Ga. 677, 679 (362 SE2d 214) (1987). Appellants fail to point to any evidence that Appellees had actual knowledge of PHDC's or Sissine's intent to defraud Appellants. Instead, they rely on Appellees' knowledge of PHDC's financial difficulties, the subsequent failure to inform Appellants about the McGuire security deed, and PHDC's alleged misrepresentation at closing regarding the existence of that deed. However, these circumstances alone do not show that Appellees had a reasonable suspicion when the McGuire security deed was executed that PHDC or Sissine had an intent to defraud Appellants. PHDC did not execute a contract for the sale of Lot 6 and close thereon until a month after execution of the McGuire security deed, and there was no evidence of collusion. See *Einstein's Sons v. Lee*, 89 Ga. 130 (1) (15 SE 27) (1892); *Shockley Plumbing Co. v. NationsBank*, 229 Ga. App. 60, 62 (1) (493 SE2d 227) (1997). To the contrary, the circumstances were that Appellees were terminating their business relationship with PHDC and Sissine and, as discussed above, were entitled to assume that the ultimate purchasers of Lot 6 from PHDC would be informed of the McGuire security deed and, in the absence of any different indication, that Sissine would not engage in a criminal misrepresentation.

As for former OCGA § 18-2-22 (3), a critical requirement of that subsection is that the deed be without any valuable consideration. *Brown v. C & S Nat. Bank*, 253 Ga. 119, 122 (2) (317 SE2d 180) (1984). Appellants rely on a conclusory statement in Sissine's affidavit that PHDC "received no consideration for such transfer and the [McGuire] Security Deed does not secure any bona fide indebtedness." However, it is undisputed that the security deed was given to secure the $704,000 promissory note which was part of the April 5, 2002 settlement agreement. That agreement shows on its face that McGuire accepted the note in return for payment of its previously unliquidated management fee and for its withdrawal as manager of PHDC. Appellants have failed to point to any specific admissible evidence refuting these terms of the McGuire security deed and the April 5, 2002 settlement. See *Bradley v. Tattnall Bank*, 170 Ga. App. 821, 828 (2) (318 SE2d 657) (1984). "[T]he performance of services can constitute valuable consideration" which precludes the application of former OCGA § 18-2-22 (3). *Lionheart Legend v. Norwest Bank Minn. Nat. Assn.*, 253 Ga. App. 663, 666 (560 SE2d 120) (2002). Furthermore, the compromise of disputed claims, as

recited in a settlement agreement, is valuable consideration in the eyes of the law. *Jefferson Ins. Co. of N.Y. v. Dunn*, 224 Ga. App. 732, 739 (5) (a) (482 SE2d 383) (1997).

Accordingly, the trial court correctly granted summary judgment in favor of Appellees with respect to Appellants' fraudulent conveyance claims.

3. Appellants urge that Lot 6 must be released because equity considers that done which ought to be done and decrees accordingly, and because Appellees' agreement with PHDC and Sissine required only that First Capital be paid enough proceeds from the first lot sale to secure a lot release, with the remainder to go to PHDC. However, the McGuire security deed, as quoted above, includes two separate requirements for the release of Lot 6. That lot must not only have been released from the senior security deeds, the proceeds of its sale must have been applied to the senior secured loans. Under Appellants' construction of the McGuire security deed, any application of the sale proceeds would be acceptable so long as the lot was released from all senior security deeds and, therefore, inclusion in the McGuire security deed of the requirement for application of the sale proceeds would be meaningless. See OCGA § 13-2-2 (4); *Wiggins v. Southern Bell Telephone & Telegraph Co.*, 245 Ga. 526, 529 (1) (266 SE2d 148) (1980); *Zachry v. Indus. Loan & Investment Co.*, 182 Ga. 738, 748 (2) (186 SE 832) (1936). Thus, the trial court correctly found that, under the McGuire security deed, McGuire would release lots "so long as the entire purchase amount was used to satisfy the senior deeds encumbering such lot." As it is undisputed that some of the proceeds from the sale of Lot 6 were not used to satisfy the senior security deeds, the terms of the McGuire security deed did not mandate release of Lot 6 from that security deed.

4. As for the claim that SunTrust is entitled to equitable subrogation, we have consistently described that doctrine as follows:

> "Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby; knowledge of the existence of an intervening encumbrance will not alone prevent the person

advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer." [Cit.] (Emphasis omitted.)

*Bankers Trust Co. v. Hardy*, 281 Ga. 561, 563 (640 SE2d 18) (2007).

Where, as here, the party claiming subrogation advanced the money to pay a debt without any legal obligation and was not compelled to do so for the preservation of his own rights or property, subrogation may nevertheless arise if " 'he advanced money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor.' " *Bankers Trust Co. v. Hardy*, supra at 564, fn. 8. See also *Gilbert v. Dunn*, 218 Ga. 531, 533 (128 SE2d 739) (1962). Contrary to the trial court's order, such an agreement "is sufficient to overcome constructive notice of the intervening lien . . . ." *McCollum v. Lark*, 187 Ga. 292, 303 (200 SE 276) (1938).. However, actual knowledge thereof by the party advancing the funds to pay off the senior encumbrance "would tend to indicate an intent to give priority to the intervening lien, as well as the absence of an understanding that the advance would be secured by a senior lien on the property. [Cit.]" *Davis v. Johnson*, 241 Ga. 436, 439, fn. 1 (246 SE2d 297) (1978).

The trial court held that the doctrine of equitable subrogation is inapplicable "where, in connection with the purchase of property, a lender loans money which results in a senior security deed being released from the subject property but does not result in a junior lien being released from the property. [Cit.]" However, this Court has held that equitable subrogation applies even where a senior encumbrance is satisfied out of purchase money. *McCollum v. Lark*, supra at 300; *Peagler v. Davis*, 143 Ga. 11 (1) (84 SE 59) (1915). Compare *Ragan v. Standard Scale Co.*, 128 Ga. 544 (58 SE 31) (1907) (no express or implied agreement with debtor or creditor). Appellees do not contend otherwise, but rather assert that an express subrogation agreement was present in the cases involving a sale to a third party, unlike those cases involving a transaction more akin to a refinancing. However, the cases on which Appellees rely do not require an express agreement. Such a requirement would be contrary to the recent and well-established precedent discussed above. *Bankers Trust Co. v. Hardy*, supra; *Gilbert v. Dunn*, supra. Moreover, "the equities are substantially similar in refinancing and sales transactions . . . ." *East Boston Savings Bank v. Ogan*, 701 NE2d 331, 334 (2) (Mass. 1998) (equitable subrogation of a new mortgage given as part of a sale). Appellees do not offer, and we do not find, any

sufficient rationale for a special rule requiring an express agreement in the latter instance. Although the trial court described the doctrine of equitable subrogation as "limited,"

> "[t]he courts incline rather to extend than restrict the principle. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen." [Cit.]

*Davis v. Johnson*, supra at 439. See also *Bankers Trust Co. v. Hardy*, supra at 562 (equitable subrogation is "founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the parties, and its object is the prevention of injustice. [Cits.]").

The undisputed evidence of the circumstances surrounding the May 10, 2002 closing shows a clear understanding at least with PHDC that the advance made by SunTrust was to be secured by the senior encumbrance on the property. The fact that such advance did not fully satisfy the First Capital security deed does not violate the rule that, "[w]here less than the total amount of [the] debt is tendered, subrogation is not permitted. [Cit.]" *Jessee v. First Nat. Bank of Atlanta*, 154 Ga. App. 209, 210 (2) (267 SE2d 803) (1980). "The rationale behind the rule is that equitable subrogation should not prejudice the senior lienholder's attempt to collect the entire indebtedness secured by the senior lien. [Cits.]" *Dietrich Indus. v. United States*, 988 F2d 568, 572 (II) (B) (3) (5th Cir. 1993). See also *Jessee v. First Nat. Bank of Atlanta*, supra.

> The fact that [SunTrust] has not paid the entire indebtedness is not a matter about which [McGuire], as a junior lienholder, can complain. [Cit.] Moreover, [First Capital's] rights will not be prejudiced by [SunTrust's] subrogation because [First Capital] agreed to release its entire lien [on Lot 6] in exchange for [a specified] partial payment of the debt.

*Dietrich Indus. v. United States*, supra at 572-573 (II) (B) (3).

Furthermore, the remaining requirements of equitable subrogation as quoted above from *Bankers Trust* have been met. As a matter of law, "we cannot say that [SunTrust] is guilty of culpable or inexcusable neglect where it is clear that it was not aware of [the McGuire security deed] because it was [not yet] indexed." *Hayes v. EMC Mortgage Corp.*, supra at 711. Evidence that the closing

attorneys may have had some inquiry notice prior to closing fails to show actual knowledge by SunTrust and, thus, cannot create a jury issue regarding culpable or inexcusable neglect. Indeed, even if the McGuire security deed had been indexed by the county and overlooked by Appellants, "[t]his error [would] not [be] egregious enough to defeat [the] claim for equitable subrogation." *East Boston Savings Bank v. Ogan*, supra at 336 (4) (also following the Georgia rule regarding the effect of actual and constructive notice of an intervening lien on a subrogation claim, supra at 335 (3)). See also *McCollum v. Lark*, supra at 303; *Brooks v. Resolution Trust Corp.*, 599 S2d 1163, 1165 (Ala. 1992). We also "cannot say that [SunTrust's] exercise of the right of subrogation would prejudice [McGuire's] rights where as here [its security deed] remains second in order of priority." *Hayes v. EMC. Mortgage Corp.*, supra at 712. At the time McGuire recorded its security. deed, First Capital's "senior security deed was still of record. Therefore, in no legally cognizable sense will [McGuire] be prejudiced by" equitable subrogation in favor of SunTrust. *Davis v. Johnson*, supra at 440.

Accordingly, the trial court erred both in granting summary judgment in favor of Appellees and in denying summary judgment to SunTrust on its claim for equitable subrogation.

5. Appellants further contend that McGuire is not entitled to maintain its counterclaim for quiet title relief, because it is not in possession of Lot 6.

The Quiet Title Act of 1966 "eliminates the requirement of possession. See OCGA § 23-3-61." *Smith v. Ga. Kaolin Co.*, 264 Ga. 755, 756 (2) (449 SE2d 85) (1994). "Under the conventional quiet title action, [however], the general rule [is] that a person had to prove actual possession of the land to bring a petition to cancel an instrument that cast a cloud on the title. [Cits.]" *Smith v. Ga. Kaolin Co.*, supra. One of the exceptions to this general rule is that, "[w]here there is any other distinct head of equity jurisdiction sufficient to support the action, possession by the plaintiff is not required, but equity will retain the cause and grant relief by quieting the title or removing clouds. (Cit.)' [Cit.]" *Vaughan v. Vaughan*, 253 Ga. 76, 78 (317 SE2d 201) (1984). Since Appellants sued for cancellation of the McGuire security deed, the trial court "could properly exercise[ ] jurisdiction of the whole controversy for the purpose of quieting the title . . . . [Cits.]" *Terry v. Ellis*, 189 Ga. 698, 700 (6) (c) (7 SE2d 282) (1940).

Thus, the trial court correctly held that McGuire is entitled as a matter of law to a decree in quia timet that the McGuire security deed is valid and enforceable against Lot 6. Based on our discussion in Division 4 above, however, the trial court erred in that decree to the extent that it held that the SunTrust security deed is subordi-

nate to the McGuire security deed and that McGuire, in its superior position, is entitled to the proceeds of a foreclosure sale to the full extent of the indebtedness.

6. Appellants assert that the trial court erroneously denied their motion for summary judgment with respect to McGuire's counterclaims for damages resulting from slander of title and for attorney's fees pursuant to OCGA § 13-6-11. However, the damages counterclaim was deleted in an amendment to McGuire's answer and, therefore, is moot.

Furthermore, a plaintiff-in-counterclaim cannot recover attorney's fees under OCGA § 13-6-11 unless he asserts a counterclaim which is an independent claim that arose separately from or after the plaintiff's claim. *Sanders v. Brown*, 257 Ga. App. 566, 570 (c) (571 SE2d 532) (2002) (citing *Vogtle v. Coleman*, 259 Ga. 115, 117 (3) (376 SE2d 861) (1989)). Because the quiet title counterclaim is not independent from Appellants' complaint, McGuire cannot recover attorney's fees. Even if that counterclaim could in some way be considered independent from the complaint, McGuire still cannot recover under OCGA § 13-6-11 because it based its claim for attorney's fees on the alleged stubborn litigiousness of Appellants, yet has prevailed on only part of its quiet title counterclaim. "A bona fide dispute as to part of a claim precludes a finding of stubborn litigiousness. [Cit.]" *Candler v. Wickes Lumber Co.*, 195 Ga. App. 239, 242 (1) (b) (393 SE2d 99) (1990). Moreover, McGuire has failed to set forth any facts showing that Appellants have been stubbornly litigious. See *Sampson v. Haywire Ventures*, 293 Ga. App. 779, 782 (5) (668 SE2d 286) (2008). Accordingly, the trial court erred in failing to grant summary judgment in favor of Appellants as to McGuire's claim for attorney's fees pursuant to OCGA § 13-6-11.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 18, 2009 —
RECONSIDERATION DENIED JUNE 15, 2009.

*Beloin, Brown, Blum & Baer, Frederic S. Beloin, Charles W. Brown, Ray B. Gary, Jr.*, for appellants.

*Proctor Hutchins, Robert J. Proctor, Adam C. Caskey*, for appellees.

*Andersen, Tate & Carr, Thomas T. Tate, Jason W. Blanchard*, amici curiae.