## A99A1058. PARKS et al. v. BREEDLOVE.
(526 SE2d 137)

PHIPPS, Judge.

Preston Breedlove obtained a jury verdict against Wayne and Sandra Parks for expenses he incurred in the construction of their home. The Parkses filed a motion for new trial, claiming that the verdict is contrary to the law and to the evidence, that there are inconsistencies in the jury's verdict, and that the trial court erred in refusing to allow them to call additional witnesses. They appeal the trial court's denial of their motion. Because we find that the Parkses' post-trial claims are without merit, we affirm.

In 1995, Breedlove, a general contractor, entered into a contract to build a custom home for Mr. and Ms. Parks. The parties dispute the actual terms of the contract, but agree that the Parkses had the right to submit changes to the contract and that Breedlove was entitled to be paid for any additional expenses associated with performing those requested changes. Problems arose as the construction progressed, and Breedlove ultimately withdrew from the project before the house was completed. When the Parkses repeatedly refused to pay expenses associated with changes they had requested, Breedlove brought suit for all of his unpaid construction expenses, his contractor's fee, interest, and litigation expenses, including attorney fees. The Parkses counterclaimed for breach of contract based on Breedlove's abandonment of the project and defective and negligent construction, for fraud and deceit based on Breedlove's representations regarding his ability to construct the roof and a concrete deck, and for litigation expenses.

1. The Parkses claim the trial court erred by denying their motion for new trial based on their assertion that the jury's award of attorney fees and expenses to Breedlove was contrary to law and to the evidence.

The parties agree that the award was made pursuant to OCGA § 13-6-11, which allows the jury to award the plaintiff litigation expenses where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. The question of whether attorney fees are appropriate

under this Code section is for the jury.[1] The standard of review of an award under OCGA § 13-6-11 is whether there is any evidence to support the award.[2]

The Parkses contend Breedlove waived his right to seek litigation expenses for bad faith because he failed to include a request for fees and expenses on that basis in the pretrial order. A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice.[3] An issue is waived if not included in the pretrial order.[4] Nonetheless, a pretrial order "should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues."[5] Breedlove preserved the issue of litigation expenses by including in his proposed verdict form (which was part of the pretrial order) a finding of attorney fees based on stubborn litigiousness.

The jury was charged that litigation expenses could be awarded to Breedlove "if you find that the Parks[es] have acted in bad faith or have been stubbornly litigious or have caused Mr. Breedlove unnecessary trouble and expense." Any complaint regarding the charge had to be made before the jury returned its verdict.[6] Because their counsel made no objection to the charge at any time, the Parkses have waived their right to object. Therefore we must uphold the jury's verdict on litigation expenses if there is evidence to support any of the three grounds set forth in OCGA § 13-6-11.

To determine whether any evidence exists to support an award of litigation expenses based on bad faith, we look to the Parkses' conduct in entering into the contract with Breedlove and to the dealings between the parties prior to the filing of the lawsuit.[7] If there is bad faith in the making or performance of the contract, "attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties."[8]

There is some evidence from which the jury could have found that the Parkses acted in bad faith in performing their contract with Breedlove. Breedlove testified that he presented Ms. Parks with an invoice related to several changes she and her husband had suggested be made to the original construction plans and met with Mr.

---

[1] *Spring Lake Property Owners &c. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990).

[2] Id.

[3] OCGA § 9-11-16.

[4] *Fussell v. Carl E. Jones Dev. Co.*, 207 Ga. App. 521, 522 (1) (a) (428 SE2d 426) (1993).

[5] (Citations and punctuation omitted.) Id. at 522-523 (1) (b); *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821, 822 (2) (476 SE2d 22) (1996); *Ackley v. Strickland*, 173 Ga. App. 784, 787 (328 SE2d 549) (1985).

[6] OCGA § 5-5-24 (a).

[7] *Kemira, Inc. v. Williams Investigative &c. Svcs.*, 215 Ga. App. 194, 200 (3) (450 SE2d 427) (1994).

[8] *McDonald v. Winn*, 194 Ga. App. 459, 460 (2) (390 SE2d 890) (1990).

Parks on four occasions to request payment. After the fourth visit, Mr. Parks responded that he was still reviewing the invoice and had some questions, but did not have those questions with him. Breedlove became concerned about whether he would be paid for the entire project when the Parkses would not pay him $3,030 for the changes they had specifically requested. He suggested the parties meet with their attorneys to try to resolve these issues.

Breedlove testified that the parties met, with their attorneys present, and that he agreed to withdraw from the project, waive his contractor's fee, ensure that the house passed rough inspection, and provide the Parkses with a list of all subcontractors and suppliers who had provided work or materials for the project. In exchange, the Parkses agreed to pay Breedlove $26,169.82 for outstanding construction expenses.

According to Breedlove, he did everything required of him under that agreement. The Parkses did not pay Breedlove for any of his expenses, but did hire an engineer to review what they thought might be problems with the construction. Although the engineer noted some problems with the roof supports that could have been fixed at the time, the Parkses did not have the repair work done or request that the county inspectors come back to review these potential problems. Instead, they paid the engineer to redesign their deck, largely for aesthetic reasons.

Thus there is evidence to support an inference by the jury that the Parkses' refusal to pay Breedlove's expenses was not based on an honest belief that the expenses were not actually or necessarily incurred or that they had been defrauded. The jury could have inferred that the Parkses refused to pay Breedlove because they believed it was in their best financial interest not to pay him. Because there was evidence sufficient to authorize these inferences, the jury was justified in awarding litigation expenses based on bad faith.[9] We must therefore affirm the jury's award of litigation expenses to Breedlove.

Because we find there was evidence that authorized the jury to award Breedlove his litigation expenses based on a finding of bad faith, we do not address whether an award also would be authorized based on a finding of stubborn litigiousness or causing unnecessary trouble and expense.

2. The Parkses contend the trial court erred by denying their motion for new trial because the verdict was inherently inconsistent and ambiguous.

The verdict form at issue provided spaces for the jury to indicate

---

[9] See *Glenn v. Fourteen West Realty*, 169 Ga. App. 549, 551 (2) (313 SE2d 730) (1984).

a finding in favor of Breedlove or the Parkses. Under the heading for each party, the form included an itemization of potential categories of damages. For Breedlove, the form provided for a potential award of building and supply costs, contractor's fee, interest, and attorney fees and expenses. For the Parkses, the categories included general damages, litigation expenses, and attorney fees and expenses. The verdict form also included a separate question, to be answered only if an award was made in favor of the Parkses, of whether they were entitled to damages based on their fraud counterclaim.

The jury found for Breedlove in the following amounts: building and supply costs $26,169.82; contractor's fee $10,000; interest $0; and attorney fees and expenses $10,717.21. They also included a handwritten notation regarding the contractor's fee award, indicating that the $10,000 "represents one-half of total fee less compensation to complete work at Parks' home." The Parkses contend that the notation could indicate the jury intended to award them some money to complete work at their house, and, if so, that intention would contradict the award of attorney fees and expenses to Breedlove. They also claim that it is impossible to determine whether the jury intended to award them compensation based on their claim of negligent construction or their claim of fraud because the jury failed to answer the question regarding intentional conduct.

We hold that the Parkses waived any objection to the form and consistency of the jury's verdict. The verdict form was reviewed and approved by counsel for both parties before the jury began its deliberations and after the verdict was returned. "If either party felt the verdict was vague and ambiguous, objection should have been made when the verdict was returned so that the jury could clarify its meaning."[10]

3. The Parkses claim the trial court abused its discretion in refusing to allow additional witnesses on the last day of trial.

The issue arose during the second day of Mr. Parks's direct examination, which took place on a Monday. When the Parkses' counsel made reference to a witness to follow Mr. Parks, the judge told him that Mr. Parks would be the last witness. The judge reminded counsel of an agreement made the previous Friday that if he allowed Mr. Parks's testimony to be interrupted and continued after the weekend, because Parks was unable to provide details regarding certain amounts spent to complete his house, the Parkses would have to present the rest of their case on that Friday. The judge also recounted

---

[10] (Citations and punctuation omitted.) *Tucker v. Love*, 200 Ga. App. 408, 410 (3) (408 SE2d 182) (1991); see also *KDS Properties v. Sims*, 234 Ga. App. 395, 399 (4) (506 SE2d 903) (1998) (to preserve challenge to verdict form, issue must be raised and ruled upon by judge before jury is dismissed).

counsel's response that he would not have any additional witnesses. Although counsel agreed that the judge had accurately described their agreement and conceded that the evidence he wanted the additional witnesses to present was going to be admitted during Mr. Parks's testimony, he noted his objection to the judge's action on the record.

The trial court has the authority to control the course of the trial, and the parties are not entitled to present their cases without limit. But the trial court cannot "impose limits on the trial of the case which have the effect of excluding relevant, non-cumulative evidence simply because it delays the conclusion of the trial."[11] That was not the case here. The judge excluded the Parkses' additional witnesses based on an agreement between counsel and the court that Mr. Parks would be the last witness prior to rebuttal. Given these facts, we find no abuse of discretion in the judge's refusal to allow additional witnesses.

Moreover, the Parkses have not demonstrated harm resulting from the judge's action.[12] Their counsel conceded that the reason he wanted to call additional witnesses was to introduce evidence to which Breedlove's counsel had objected during Mr. Parks's testimony on Friday. That evidence was introduced and admitted during Mr. Parks's testimony on Monday.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED NOVEMBER 23, 1999.

*Dickinson, Mixson & Willis, David F. Dickinson*, for appellants.
*Dietrick, Evans, Scholz & Williams, Paul A. Dietrick*, for appellee.

---

[11] *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. 710, 714 (1) (445 SE2d 782) (1994).
[12] Id. at 715.