A02A0158. ALBEE et al. v. KRASNOFF et al.
(566 SE2d 455)

MILLER, Judge.

Roger Albee and nearly 100 other plaintiffs appeal from the trial court's dismissal of their claim for breach of fiduciary duty and the grant of summary judgment against them on their claims for breach of a personal guaranty, breach of contract, fraud, fraudulent conveyance of property, piercing the corporate veil, punitive damages, and attorney fees. On appeal they contend that the trial court erred by (1) opening the default of this case after defendant Robert Krasnoff failed to file a timely answer, (2) dismissing their claim for breach of fiduciary duty, and (3) granting summary judgment to all defendants on all of plaintiffs' remaining claims. We discern no error and affirm.

Viewed in the light most favorable to appellants, the evidence reveals that appellants were clients of an investment firm. Through their personal financial advisor at the firm, appellants were asked to invest money in Casko Investment Company, a real estate investment company that loaned money for first mortgages on single-family homes. In exchange for their investment, appellants would receive monthly principal and interest payments. To convince appellants to invest in the real estate company, Krasnoff, the President and 50 percent owner of Casko, gave appellants an oral guaranty that he would be obligated on each and every loan and further informed appellants that he would personally manage their money and be involved with the management of Casko.

The entity that serviced the loans to Casko from plaintiffs was SGE Mortgage Finance Company. Krasnoff was a 40 percent owner of SGE, and the remaining 60 percent was owned by the company's President, John Steven Cason, Sr. Cason was also the other 50 percent owner of Casko.

For nearly eight years, appellants received monthly principal and interest payments without incident. In February 1998, however, several checks to appellants bounced. These checks were later paid in full to appellants, but appellants became concerned that a "Ponzi scheme" may have been at work, which would involve multiple mortgages being sold on a single property. Cason was later asked to resign, and Krasnoff filed a receivership petition against Casko and SGE.

A committee reviewed the financial records of SGE, discovering that Cason had been embezzling money from the company. Unbeknownst to Krasnoff, Cason had been taking assets of the company for personal use, such as for private jet charters for gambling junkets. Cason hid his embezzling activities by maintaining a separate set of books that disguised what he was doing and by instructing employees to hide the true financial status of the company. Cason's conduct had caused SGE to become insolvent. Appellants lost over $5 million of their original investments, and even Krasnoff himself lost over $2 million due to the failure of Casko and SGE.

Appellants sued Krasnoff for breach of his alleged oral guaranty and for attorney fees. Appellants later amended their complaint to add Krasnoff's wife and the Krasnoff Family Irrevocable Trust, alleging, among other things, breach of fiduciary duty, fraud, and fraudulent conveyance (for Krasnoff conveying his house to his wife and to the Krasnoff Family Irrevocable Trust in 1993). Krasnoff did not file an answer to the initial complaint, and after 15 days following the original answer deadline (the time within which he could have opened the default as a matter of right (OCGA § 9-11-55 (a)), appellants moved for a default judgment. Defendant filed the necessary materials to have the default opened one day after plaintiffs' motion, arguing that the failure to answer resulted only from multiple similar lawsuits being filed against him in the same court, leading him to the mistaken impression that the suit had been answered along with all of the others when, in reality, it had not been. The trial court decided to open the default and to allow the case to proceed on the merits.

The trial court later dismissed plaintiffs' claim for breach of fiduciary duty and granted summary judgment to defendants on all of plaintiffs' remaining claims except fraud, attorney fees, and punitive damages, reserving ruling on those issues and giving plaintiffs an opportunity to come forward with more detailed evidence of Krasnoff's alleged fraudulent promises. When appellants failed to submit evidence that convinced the trial court that any genuine issue of material fact remained with respect to the fraud claim, the court granted summary judgment to defendants on all of appellants' remaining claims.

1. Appellants contend that the trial court erred by opening the default in this case. More specifically, they argue that Krasnoff's failure to answer resulted from mere inattention to court procedures, which was insufficient to warrant the opening of the default. We disagree and hold that the trial court did not abuse its discretion by opening the default in this case.

A trial court has broad discretion to open a default, and this court will not interfere with a trial court's decision to open a default absent a manifest abuse of discretion. *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 589-590 (1) (569 SE2d 242) (2002). Under OCGA § 9-11-55 (b), prior to final judgment being entered, a court may open a default where a party has satisfied four conditions and has shown any one of three grounds for opening the default. More specifically, the party must (1) make a showing under oath, (2) offer to plead instanter, (3) announce that he is ready to proceed to trial, and (4) set up a meritorious defense. The three grounds for showing that the default should be opened are (1) providential cause, (2) excusable neglect, or (3) a proper case (the broadest of all three categories). Id. at 589 (1).

The law favors the opening of defaults to allow cases to proceed on their merits:

> The rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations. Whenever possible cases should be decided on their merits for default judgment is not favored in law. Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense. In determining whether a situation is extreme, among the factors which may be considered, but which will not standing alone authorize the opening of default pursuant to OCGA § 9-11-55 (b), are: whether and how the opposing party will be prejudiced by opening the default; whether the opposing party elected not to raise the default issue until after the time under OCGA § 9-11-55 (a) had expired for the defaulting party to open default as a matter of right; and whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed.

(Citations and punctuation omitted.) *Ford v. St. Francis Hosp.*, 227 Ga. App. 823, 826 (1) (490 SE2d 415) (1997).

In the instant case, Krasnoff filed all materials necessary for compliance with OCGA § 9-11-55 (b) within one day of learning about the default (including his assertion of meritorious defenses that were

ultimately successful). Interestingly, appellants failed to raise any issue with respect to the default until defendant's time to open the default as a matter of right had already expired. This was the case even though defendant had already served extensive discovery on plaintiffs, to which defendant granted plaintiffs an extension to answer, before defendant's answer was even due. Furthermore, defendant's failure to answer in a timely manner was explained by the fact that several similar lawsuits had been filed against him, leading to understandable confusion as to whether an answer had already been filed in this case. Under the circumstances, we hold that the trial court did not abuse its discretion by opening the default and allowing the case to proceed on the merits. Cf. *Colonial Penn Ins. Co. v. Market Planners Ins. Agency*, 209 Ga. App. 562 (434 SE2d 124) (1993) (proper case found to open default where two substantively identical complaints filed and defendant mistakenly filed answer to only one).

2. Appellants argue that the trial court erred by dismissing their claim for breach of fiduciary duty. They contend that their allegation that Krasnoff made personal promises to appellants to convince them to invest in Casko created a confidential relationship between Krasnoff and appellants. Since the allegations cannot support an action for breach of fiduciary duty, we disagree with appellants and hold that the trial court properly dismissed this claim.

Under OCGA § 23-2-58, a confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (Citation and punctuation omitted.) *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440) (1968).

Here, appellants had their own financial advisors in this business transaction, which belies the inference of any confidential relationship between appellants and Krasnoff. Appellants' allegations do not indicate the existence of a confidential relationship. See *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 126 (2) (a) (483 SE2d 135) (1997) (no confidential relationship between lender and borrower). We decline to adopt a holding that would essentially convert every arm's length business transaction into a confidential relationship. The trial court properly dismissed this claim.

3. Appellants further argue that the trial court erred by granting summary judgment to defendants on appellants' claim for breach of

an oral guaranty. Appellants contend that Krasnoff's oral guaranty to appellants constituted an "original undertaking," which exempted it from the Statute of Frauds. We disagree.

On appeal from the grant of summary judgment, we conduct a de novo review of the evidence, viewed in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250-251 (510 SE2d 541) (1998).

Pursuant to OCGA § 13-5-30 (2), a guaranty must be in writing. An original undertaking, which is not subject to the Statute of Frauds (see *B. J. Howard Corp. v. Skinner, Wilson & Strickland*, 172 Ga. App. 180-181 (1) (322 SE2d 306) (1984)), is not the same thing as a guaranty. The difference between a guaranty, which must be in writing, and an original undertaking, which need not be, depends on whether the guarantor is to be primarily liable for the debt. If the guarantor promises to answer for the debt of another (who is primarily liable), that would be a classic guaranty. See *Bennett Oil Co. v. Harrell*, 143 Ga. App. 268 (238 SE2d 267) (1977). In the case of an original undertaking, on the other hand, the new promisor must substitute himself as the primary party to perform. See *B. J. Howard Corp.*, supra, 172 Ga. App. at 181 (1). In other words, in the case of an original undertaking, the creditor must be looking primarily to the guarantor for complete payment, rather than looking primarily to the third party (and only to the guarantor upon default).

The evidence here reveals that, at most, Krasnoff's promise to appellants' agent would have created a classic guaranty. Appellants were looking first to Casko/SGE for payment, and in the event of a default then would look to Krasnoff for payment. Since this guaranty was not in writing, appellants are precluded from enforcing it. See *Bennett Oil Co.*, supra, 143 Ga. App. at 269. The trial court therefore did not err by granting summary judgment to defendants on this claim.

4. We also find that the trial court did not err by granting summary judgment to defendants on appellants' claims for breach of contract and fraud. Appellants' arguments that Krasnoff created a contract with them by orally representing that he would manage their funds, and that his alleged promises also constituted fraud, are without merit.

We hold that the alleged oral promises made here are too vague to create an enforceable contract. Krasnoff's promises to manage plaintiffs' future investments and be involved in Casko's operations are too indefinite to provide concrete parameters for an enforceable agreement, as there is no evidence in the record as to what the parties agreed that Krasnoff's management and involvement were sup-

posed to entail. See, e.g., *Autrey v. UAP/GA AG CHEM*, 230 Ga. App. 767, 769 (1) (a) (497 SE2d 402) (1998); see also *Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438, 441-442 (2)-(3) (130 SE2d 530) (1963). Appellants have not shown the existence of an enforceable contract, and the trial court correctly granted summary judgment to defendants on the breach of contract claim.

Similarly, the alleged promises also were not definite enough to support an action for fraud. "Although fraud can be predicated on a misrepresentation as to a future event where the promisor knows that the future event will not take place, fraud cannot be predicated on a promise which is unenforceable at the time it is made." (Citation and punctuation omitted.) *Autrey*, supra, 230 Ga. App. at 769 (1) (a). All of the alleged promises here are too vague and indefinite to be enforced and, therefore, cannot form the basis for a fraud action. See id.

5. Appellants' claim for piercing the corporate veil is also without merit, and we agree with the trial court that summary judgment should have been awarded to defendants on this claim.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility." (Citation and punctuation omitted.) *Commonwealth Financial Corp. v. Sherrill*, 197 Ga. App. 403, 404 (1) (398 SE2d 438) (1990). Absent some intentional conduct on the part of the individual shareholder to misuse or abuse the corporate form, we will not pierce the corporate veil to hold that individual shareholder liable for the obligations of the corporation. See, e.g., *Hickman v. Hyzer*, 261 Ga. 38, 39-40 (1) (401 SE2d 738) (1991).

Here, the evidence reveals that appellants' advisors knew that Casko was a shell corporation that had no assets and that SGE serviced the loan agreements. The only evidence of abuse of the corporate form came from Cason embezzling funds from the company, and not from any intentional action by Krasnoff. Appellants were in no way misled or cheated due to any alleged abuse of the corporate form of Casko by Krasnoff. The trial court properly granted summary judgment to defendants on this claim.

6. Appellants further argue that the trial court erred by granting summary judgment to defendants on appellants' claim for fraudulent conveyance. We disagree.

OCGA § 18-2-22 allows for creditors and others to challenge fraudulent conveyances of property by a debtor. Pursuant to subsection (2) of the statute, it must be shown that the conveyance was made with the intent to delay or defraud creditors, and that the recipient of the conveyance also knew of that intent, in order to have

it set aside as fraudulent. See also *Stokes v. McRae*, 247 Ga. 658, 659 (2) (278 SE2d 393) (1981).

The undisputed testimony of Krasnoff and his wife revealed that the house was conveyed for estate planning purposes, and we find no circumstances from which a jury could infer that defendants acted with an intent to defraud creditors based on this transaction. Summary judgment was properly awarded to defendants here.

7. Since the trial court correctly dismissed appellants' claim for breach of fiduciary duty and properly granted summary judgment on all of appellants' remaining underlying claims, the grant of summary judgment on appellants' punitive damages and attorney fees claims was also proper. See *Groutas v. McCoy*, 219 Ga. App. 252, 254 (3) (464 SE2d 657) (1995); see also *Matthews v. Tele-Systems, Inc.*, 240 Ga. App. 871, 874 (4) (525 SE2d 413) (1999).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 12, 2002 —

*Pursley, Howell, Lowery & Meeks, Kevin B. Buice, Christian F. Torgrimson*, for appellants.

*Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John D. Dalbey*, for appellees.