A06A1400, A06A1401. GERSCHICK et al. v. POUNDS (two cases).
(636 SE2d 663)

MIKELL, Judge.

This is the second appearance of this case before this Court. In *Gerschick v. Pounds*[1] *("Gerschick I")*, we affirmed the grant of partial summary judgment to Robert Don Pounds on the issue of contribution in his action against Dennis Gerschick and Jane Freeland Gerschick. The underlying facts, as recited in part in *Gerschick I*, show that Gerschick, an attorney and CPA, represented Pounds and his son, Robert Van Pounds, in their lawsuit against Richard Todd Spurlin and Spurlin Industries, Inc.[2] After Spurlin prevailed, the State Court of Fulton County awarded Spurlin $321,306 in attorney fees, entering judgment on July 16, 1999, in that amount against Don Pounds, Van Pounds, and Gerschick, jointly and severally.[3] Don Pounds satisfied the judgment and sued Gerschick for contribution in the Superior Court of Cobb County, which granted partial summary judgment to Pounds against Gerschick for $107,102 in August 2002.[4] *Gerschick I* affirmed that judgment. Pounds had also claimed that Gerschick had transferred his interest in the marital residence to his

---

[1] 262 Ga. App. 554 (586 SE2d 22) (2003).
[2] Id.
[3] Id.
[4] Id. at 555.

wife in a fraudulent attempt to avoid collection of the debt, and that claim remained pending when we issued *Gerschick I.*[5]

Don Pounds later died, and his wife, Sara Pounds, maintained the fraudulent conveyance action as executrix of her husband's estate. The claim was tried to a jury, which returned a verdict in favor of Mrs. Pounds. In the second phase of the bifurcated trial, the jury awarded her $108,312.92 in attorney fees pursuant to OCGA § 13-6-11. The court entered judgment for $107,102 against Gerschick as contribution with interest awarded from December 3, 1999, set aside the quitclaim deed conveying Gerschick's interest in the marital home to his wife, and entered another judgment against both Gerschicks on the jury's verdict for attorney fees. The Gerschicks appeal. In Case No. A06A1400, they argue that the trial court erred in denying their motion for a directed verdict on the fraudulent conveyance claim, improperly charged the jury on two issues, and erred in awarding interest accruing from 1999. We reverse the award of interest but otherwise affirm the judgments. In Case No. A06A1401, the Gerschicks appeal the order imposing a supersedeas bond. That appeal is dismissed as moot.

## Case No. A06A1400

1. The Gerschicks contend that the trial court erred by denying their motion for a directed verdict on the fraudulent conveyance claim. At the outset, we note that "the standard of appellate review of the denial of a motion for directed verdict is the any evidence test."[6] "Where there is any evidence to support the jury verdict, it is proper to affirm the denial of the motion[ ], unless it is demanded as a matter of law, because the jury is the sole and exclusive arbiter of the weight and credit given to the evidence."[7] Mindful of this standard, we examine the Gerschicks' allegations.

(a) They first allege that their motion for a directed verdict should have been granted because Don Pounds was not a creditor at the time of the conveyance, as required by OCGA § 18-2-22,[8] the statute in effect at that time. We disagree. Section 18-2-22 provided in pertinent part: "The following acts by debtors shall be fraudulent

---

[5] Id. at 555, n. 4.

[6] (Citation omitted.) *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 185 (4) (558 SE2d 411) (2002).

[7] (Citation and footnote omitted.) *Bonner v. Smith*, 247 Ga. App. 419 (1) (543 SE2d 457) (2000).

[8] OCGA § 18-2-22 was repealed on July 1, 2002, when Georgia enacted the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 et seq., but this repeal did not extinguish causes of action that arose under OCGA § 18-2-22 before that date. See *Chepstow Ltd. v. Hunt*, 381 F3d 1077, 1087 (III) (D) (11th Cir. 2004).

in law against creditors *and others* and as to them shall be null and void: . . . (2) Every conveyance of real or personal estate of any description had or made with intention to delay or defraud creditors, where such intention is known to the taking party."[9]

It has been held that, "[b]y its specific terms, the statute applies to 'creditors and others.' These 'others' include plaintiffs with claims against debtors 'liable as tortfeasors, or otherwise for an unascertained damage to person or property, so far as fraudulent conveyances are concerned.' "[10] Based on this theory, we have held that a conveyance may still be fraudulent within the meaning of OCGA § 18-2-22 even if the plaintiff was not an actual creditor of the defendant at the time the quitclaim deed was filed.[11] Thus, "the statute may be invoked where a person makes a conveyance with actual intent to defraud a *future* creditor or to defeat a debt which, though contemplated, is not yet in actual existence."[12]

The evidence in the case at bar supports a finding that Gerschick made the conveyance with the intent to defraud a future creditor or to defeat a contemplated debt. The record and transcript show that Spurlin filed its motion seeking attorney fees pursuant to OCGA § 9-15-14 on May 2, 1997; that Gerschick was named as a party thereto and defended himself; that the hearing on the motion was held on July 6, 1999; that Spurlin's attorney drafted the order and submitted a copy to Gerschick prior to July 12; that the quitclaim deed was "rush recorded" on July 14, 1999; and that the final order, granting judgment against the Poundses and Gerschick jointly and severally in the amount of $321,306, was signed on July 16. Thus, there was evidence from which a jury could find that Gerschick executed the quitclaim deed "intending to defraud future creditors or to defeat contemplated debts."[13] It follows that the trial court did not err in denying the Gerschicks' motion for a directed verdict on the ground that Don Pounds was not a creditor at the time of the conveyance.

(b) The Gerschicks further assert that there was no evidence from which a jury could infer either Gerschick's intent to defraud or Mrs. Gerschick's knowledge of such intent, as required by OCGA § 18-2-22. They point to their own testimony that Mrs. Gerschick inherited $113,145 in 1998 in the form of two checks dated April 14

---

[9] (Punctuation omitted; emphasis supplied.) *Rolleston v. Cherry*, 237 Ga. App. 733, 735 (1) (521 SE2d 1) (1999), citing OCGA § 18-2-22.

[10] (Citation and punctuation omitted.) Id. at 735 (1) (a).

[11] See id. Accord *Bonner*, supra at 420 (1).

[12] (Footnote omitted; emphasis in original.) *Hadlock v. Anderson*, 246 Ga. App. 291, 294 (1) (540 SE2d 282) (2000).

[13] Id.

and June 25, respectively; that Mrs. Gerschick wanted to use the money to buy a larger house, which she wished to hold in her own name; that the contract to build the new house, which cost $342,453, was signed on April 15, 1998; that the Gerschicks moved into the new house in June 1999; and that they placed the title in both of their names in order to secure a mortgage. Gerschick testified that the lender told him to wait at least a month after the closing to transfer his interest in the property to his wife. Mrs. Gerschick testified that, although Gerschick had the deed prepared on July 1, she did not have it recorded until July 14 because that was the first time Gerschick could stay home with their four children and the construction workers. On cross-examination, Mrs. Gerschick testified that she and Gerschick had been married for twenty-two years; that she stays home with the children and pays all the bills; that Gerschick never told her that he had received a motion for attorney fees in May 1997 showing billing records of $268,000; that he never told her about the hearing on July 6, 1999, although it lasted well into the evening; and that he did not show her the order holding him jointly and severally liable for over $321,000, even though he received a copy of the draft order at least two days before she rush recorded the quitclaim deed.

The question of the grantee's knowledge of the grantor's fraudulent intent is for the jury,[14] and it "may be established either by proof of actual knowledge or by proof of circumstances sufficient to put [the] grantee on inquiry."[15] One such circumstance is a close familial relationship between the grantor and the grantee, and

> [w]hen a creditor attacks a conveyance from a husband to a wife, slight circumstances may be sufficient to establish the existence of fraud. The burden is on the husband and the wife to show that the transaction as a whole was free from fraud. And it is for the jury to say whether the husband and the wife carried their burden in this regard.[16]

In addition, "inadequacy of price, taken in connection with other circumstances of a suspicious nature, raises a vehement presumption of fraud."[17] Here, there was circumstantial evidence of fraud. No valuable consideration was given for the transfer, and Gerschick testified that he was an expert in estate planning, including the

---

[14] *Lewis v. Lewis*, 210 Ga. 330, 332 (2) (80 SE2d 312) (1954).

[15] (Citation omitted.) *Stokes v. McRae*, 247 Ga. 658, 659 (2) (278 SE2d 393) (1981).

[16] (Citations omitted.) *Dearing v. A. R. III, Inc.*, 266 Ga. 301, 302 (1) (466 SE2d 565) (1996). Accord *Bonner*, supra at 420-421 (1).

[17] (Footnote omitted.) *Hadlock*, supra at 293 (1). Accord *Stinchcomb v. Wright*, 278 Ga. App. 136, 142 (4) (628 SE2d 211) (2006).

protection of assets from claims of creditors. The circumstances, as well as the timing of the transfer, as outlined above in subsection (a), provided ample evidence of Gerschick's intent to defraud Pounds. Moreover, Mrs. Gerschick's testimony did not demand a directed verdict on the issue of her knowledge of her husband's fraudulent intent. "[A] juror is at liberty, dependent upon the circumstances of the case, to disbelieve any testimony of any or all of the witnesses in a case."[18]

Finally, *Albee v. Krasnoff*,[19] relied on by the Gerschicks, does not mandate a contrary result. In that decision, we affirmed the grant of summary judgment to the defendants on the claims of plaintiffs, investors in Casko Investment Company, for breach of a personal guaranty, breach of contract, fraud, and fraudulent conveyance of property, inter alia.[20] Krasnoff and John Cason co-owned Casko, and Krasnoff was president. Casko provided first mortgages serviced by SGE Mortgage Finance Company, of which Cason was president.[21] The plaintiffs received regular payments on their investment for eight years, then checks payable to them began to bounce in 1998.[22] After an investigation revealed that Cason was embezzling money from SGE, Krasnoff filed a receivership petition against Cason and SGE.[23] Plaintiffs lost over $5 million, and Krasnoff lost over $2 million due to the insolvency of both companies.[24] The plaintiffs' fraudulent conveyance claim against Krasnoff was based on his transfer of his house to his wife and to a family trust in 1993.[25] In affirming the grant of summary judgment on this issue, we held: "[t]he undisputed testimony of Krasnoff and his wife revealed that the house was conveyed for estate planning purposes, and we find no circumstances from which a jury could infer that defendants acted with an intent to defraud creditors based on this transaction."[26]

The Gerschicks argue that *Albee* is apposite and controlling because of their testimony that the house was conveyed for estate planning purposes. We disagree. *Albee* is distinguishable because, unlike in the present case, there were no circumstances of fraud. Krasnoff conveyed the property at least five years before evidence of

---

[18] (Citation and punctuation omitted.) *State Housecraft, Inc. v. Jones*, 96 Ga. App. 182, 184 (1) (99 SE2d 701) (1957).

[19] 255 Ga. App. 738 (566 SE2d 455) (2002).

[20] Id.

[21] Id.

[22] Id. at 739.

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 744 (6).

his partner's embezzlement came to light, whereas Mrs. Gerschick rush-recorded the deed transferring her husband's interest in the marital homeplace to herself approximately two days after her husband received a draft copy of the order which would shortly hold him jointly and severally liable for $321,306. It follows that *Albee* does not require reversal of the judgment in this case.

2. The Gerschicks next contend that the trial court erred in charging the jury, over their objection, that "[i]t is not necessary for a defendant to be indebted to plaintiff at the time of the transfer for the statute to apply." The Gerschicks argue that this charge was an inaccurate and incomplete statement of the law. We find no error. The charge is nearly a direct quote from *Hadlock v. Anderson,*[27] and is adjusted to the evidence in this case. As noted above, there was evidence that Gerschick made the conveyance with actual intent to defraud a future creditor. Moreover, the court fully and completely charged the law on fraudulent conveyances, including OCGA § 18-2-22 (2). Read and considered as a whole, the court's charge was an accurate statement of the law and was authorized by the evidence.[28]

3. In their fifth enumerated error, the Gerschicks argue that the trial court erred in charging the jury on bad faith as an avenue of recovery for attorney fees pursuant to OCGA § 13-6-11. This Code section permits the jury to award expenses of litigation and attorney fees if it determines the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.[29] Nevertheless, the Gerschicks contend that, because of the way the pretrial order stipulated that the issue of fees would be presented, the jury should have been limited to deciding whether defendants had been stubbornly litigious or had caused the plaintiff unnecessary trouble and expense. We disagree.

A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice.[30] "Nonetheless, a pretrial order should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues."[31]

Here, the pretrial order stipulated that the issue of attorney fees would be presented to the jury in a second phase of the trial if a plaintiff's verdict was returned on the fraudulent conveyance issue.

---

[27] Supra at 294 (1).

[28] See *Merrell v. Beckwith,* 263 Ga. 779, 782 (2) (439 SE2d 488) (1994) (jury charge must be considered as a whole).

[29] *Forsyth County v. Martin,* 279 Ga. 215, 219 (2) (b) (610 SE2d 512) (2005).

[30] OCGA § 9-11-16 (b).

[31] (Punctuation and footnote omitted.) *Parks v. Breedlove,* 241 Ga. App. 72, 73 (1) (526 SE2d 137) (1999).

The order provided that the jury first would be asked whether there was a bona fide controversy. If the answer was no, then the jury would decide whether attorney fees should be awarded. The order also contained the proposed verdict forms. The form as to attorney fees permitted the jury to find that Gerschick "has been stubbornly litigious or has caused Plaintiff unnecessary trouble and expense during the litigation or has acted in bad faith prior to the institution of suit in the underlying transaction." Thus, the pretrial order did not, as the Gerschicks contend, exclude bad faith as an avenue of recovery, and the trial court did not err in charging the jury that it could award attorney fees if the defendants had acted in bad faith, had been stubbornly litigious, or had caused the plaintiff unnecessary trouble and expense.

The Gerschicks also contend that the court compounded its error when it subsequently charged the jury, over objection, that "where a jury is authorized to find fraud, it is authorized to find bad faith." This charge was taken from *St. Paul Fire &c. Ins. Co. v. Clark*,[32] where we held that, "[b]ecause the jury was authorized to find fraud, it was also authorized to find bad faith."[33] The holding in *St. Paul* was based on the well-settled principle that " '[e]very intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.' "[34] While we do not necessarily approve of the charge given by the trial court, we cannot agree that it constitutes reversible error. The Gerschicks' sole argument is that the charge "compounded an error." As the trial court did not err in charging on bad faith, there was no error to compound. Therefore, this enumerated error is without merit.

4. Gerschick argues that the judgment awarding Mrs. Pounds $107,102 in contribution against him erroneously assessed interest from December 3, 1999, the date upon which Don Pounds satisfied the underlying judgment of $321,306. We agree.

The order does not state the reason for awarding interest from that date. With regard to the contribution claim, the complaint prays for interest from "July 23, 1998 pursuant to OCGA § 7-4-12."[35] Presumably, the 1998 date is a typographical error, and the prayer refers to the joint and several judgment filed on July 23, 1999. In any

---

[32] 255 Ga. App. 14 (566 SE2d 2) (2002) (subsequent history omitted). See also *Plane v. Uniforce MIS Svcs. of Ga.*, 232 Ga. App. 757, 761 (2) (503 SE2d 621) (1998).

[33] (Citation omitted.) *St. Paul*, supra at 24 (5) (a).

[34] Id., citing *Hudspeth v. A & H Constr.*, 230 Ga. App. 70, 72 (3) (a) (495 SE2d 322) (1997).

[35] Compare OCGA § 7-4-15: "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them."

event, OCGA § 7-4-12 provides that all money judgments bear post-judgment interest from the date of entry. Gerschick agrees that this Code section governs the award of interest but argues that interest runs from the date of the instant judgment assessing contribution against him. On appeal, Mrs. Pounds contends that the issue is controlled by OCGA § 9-13-78. That statute, however, simply provides a method of enforcing contribution from a joint defendant;[36] it does not purport to control an award of interest. OCGA § 10-7-51 authorizes the award of interest running from the date of a co-surety's payment of a joint obligation, but this statute applies to contribution actions arising from joint instruments executed by the sureties.[37] It does not apply to joint tortfeasors. *Gerschick I* established that Gerschick, Don Pounds and Van Pounds were joint tortfeasors.[38] As there is no legal basis for the trial court's award of interest from December 3, 1999, that portion of the judgment is reversed.

### *Case No. A06A1401*

In this case, the Gerschicks appeal the trial court's order setting a supersedeas bond in the amount of $215,414.92 for their appeal in Case No. A06A1400. That appeal is now decided, and the appeal as to the propriety of imposing the supersedeas bond is dismissed as moot.

*Judgment affirmed in part and reversed in part in Case No. A06A1400. Appeal dismissed as moot in Case No. A06A1401. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 27, 2006 —
RECONSIDERATION DENIED SEPTEMBER 13, 2006 —

*Leonard & Swenson, William G. Leonard, Dennis J. Gerschick,* for appellants.

*Henry A. Hibbert,* for appellee.

---

[36] See generally *City of Rome v. Southern R. Co.*, 50 Ga. App. 185 (177 SE 520) (1934).

[37] See OCGA § 10-7-50; see also *Murphy v. McCaughey*, 262 Ga. App. 570, 571-572 (1) (586 SE2d 16) (2003).

[38] *Gerschick I*, supra at 556 (2).