A89A1909. CANDLER v. WICKES LUMBER COMPANY et al.
A89A1910, A89A1911. CANDLER v. WIELAND et al.; and vice
versa.

(393 SE2d 99)

BEASLEY, Judge.

These cases are consolidated appeals and a cross-appeal from a judgment. The dispute involves adjacent parcels of property in Service Merchandise Plaza in the City of College Park.

Appellees Wieland and other partners ("Wieland") own a parcel of land on which appellee Wickes Lumber Company is a tenant. Appellant Candler is the owner of a long term leasehold interest in the realty adjoining the Wieland land and operates a shopping center on it. The two properties have a common property line of several hundred feet, most of which runs across a paved parking lot used by customers and employees of the stores on each parcel.

In 1970 Candler's predecessor in title and Wieland executed a written easement agreement over and across certain sections of the common property line within the paved parking area, granting the right of ingress and egress across the common property line "in such manner as to provide an unobstructed flow of vehicular and pedestrian traffic between the two properties." A parking easement was also established by the agreement.

In May 1986, without prior notice to Wickes or Wieland, Candler broke ground on a proposed retail store building on his property running 180 feet along and roughly parallel to the common property line. Wickes sued Candler and his contractor Ken Pritchard, d/b/a Pritchard Construction Company, seeking temporary and permanent injunction against the construction of this "Building J" for violation of the access and parking easements. Alleging that Candler was "stubborn and litigious (sic)" and guilty of bad faith in the matter, Wickes sought expenses of litigation and attorney fees. A temporary restraining order stopped construction. At its expiration, Candler voluntarily abandoned further construction. Several months later Wieland filed a similar complaint seeking injunctive relief. Wieland claimed, in addition, violation of visibility or view rights and sought to terminate a sewer easement utilized by Candler across Wieland property. By amendment allowed, they added as parties the City of College Park, its Board of Zoning Appeals, its City Council and members as named, alleging that they improperly and unconstitutionally granted a variance to Candler in 1981 for construction of Building J.

Wieland moved for summary judgment as to Candler and Pritchard only. Wickes later joined that motion but added no new parties to its action. The trial court, which had the easement document in evidence, denied the motions for summary judgment, stating that it could not say "as a matter of law, that the Easement Agreement pro-

hibits the proposed construction." It also stated that "the issue of cancellation of the sewer easement is not proper for summary adjudication. . . ." It went further and in effect granted summary judgment *against* Wieland on the variance issue, stating that "proper government authorization was obtained for the construction of 'Building J.' "

The two actions were consolidated for bench trial. At the close of plaintiffs' evidence, the Wieland counsel stated in his place that his law firm had spent about $5,000 in expenses and approximately 500 hours of attorney time in representing them, that their lawyers' fees ranged from $100 to $225 an hour and paralegal fees from $45 to $65 an hour, and that this was the best evidence he had at the time. He acknowledged that a substantial amount of discovery related to the variance and sewer issues. Wickes' attorney stated in his place that he had 86 hours in the case and his average hourly rate over the course of the case was $100. Wickes' counsel offered himself for cross-examination, but Candler's counsel declined and made no objection concerning the admissibility of this evidence.

At the conclusion of the trial the court suggested that he and counsel hold a teleconference so he could set forth his tentative findings and allow counsel to propose findings of fact and conclusions of law. During the teleconference, the court informed counsel that he found the intent of the easement to provide an unobstructed flow of vehicular and pedestrian traffic would have been clearly violated by the construction of Building J, and that he would grant a permanent injunction against it. He also expressed his intent to award attorney fees, "but not to the full extent asked." Explaining that while the easement question was not a summary judgment issue because there were factual questions, he concluded that there was not a "significant" fact issue and thus he thought attorney fees "in the amount of fifty percent, as requested by both Wickes and Wieland, ought to be awarded. After commenting that he was not prepared to make a finding that bad faith had been shown, the court stated that was why he thought fifty percent of the attorney fees sought was a proper award. Suggesting this should be set out in the order, the court concluded the conference by asking counsel either to present agreed findings of fact and conclusions of law or to submit individual ones for the court to redraft.

The parties were unable to agree. By letter to the court, Candler's counsel requested it to reconsider its oral ruling in regard to attorney fees and costs.

Wieland responded in a letter arguing the lack of merit of Candler's position regardless of the denial of both plaintiffs' and defendants' motions for summary judgment. This letter urged the court to find that even if plaintiffs did not make the detailed showing of "rea-

sonableness" of attorney fees which defendants Candler and Pritchard argued was required, they were nevertheless entitled under OCGA § 9-15-14 to all such costs as may be found by the court; and that since the award was statutorily mandated, the court and not a jury determines what is reasonable, under the any evidence standard. The letter concluded: "From evidence received at the trial, it appears that [d]efendants have paid their [c]ounsel more than $50,000. . . . We note in this regard that we have advised [c]ounsel for [d]efendants that our fees and expenses *not* involved with the College Park [variance] issue aggregated $77,911 and $5,045, respectively, as of . . . September 30th; we have also invited inspection of our billing records. We are prepared to submit to such further evidentiary hearing regarding fees and expenses as the [c]ourt may wish, and we are also prepared to file a formal motion under OCGA § 9-15-14 for that purpose." (Indention omitted.) No such motion was filed nor was a further trial of the issue conducted.

The court in a final judgment held that Building J violated the intent of the easement agreement by constituting a substantial obstruction of the flow of traffic between the properties; that this finding was not based on any alleged visibility easement or upon the destruction of existing parking places; and that while Candler had "been stubborn and litigious in that his proposed building violate[d] the unambiguous intent of the [e]asement [a]greement," the "action or defense of this action was [not] done in bad faith as there was an arguable question of fact." The court held that "the attorney fees incurred by the plaintiffs were reasonable and necessary" but declined to award the full amount requested. It ordered Candler to pay Wieland $44,000 and Wickes $4,300.

### Case Nos. A89A1909 and A89A1910

1. Candler appeals only from the awards of attorney fees, on three grounds: 1) attorney fees cannot be awarded in an equity action; 2) attorney fees were precluded by a bona fide controversy; 3) lack of proof of the reasonable value of the fees and their certainty, for the work performed, as to the claim on which plaintiffs prevailed.

Appellees' post-trial letter to the trial court sought attorney fees pursuant to OCGA § 9-15-14, although in their complaints both Wieland and Wickes "specially pleaded and . . . made prayer therefor" in accordance with OCGA § 13-6-11. See *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 275 (7) (329 SE2d 900) (1985). The court order does not refer to either Code section. However, its finding that Candler had been "stubborn and litigious (sic)" and its use of other language found in OCGA § 13-6-11 but not in OCGA § 9-15-14 convinces us that the attorney fee awards were made under the aegis of

OCGA § 13-6-11. All appellate arguments are directed to that statute. The errors enumerated will be considered only under it.

(a) Attorney fees are allowable under OCGA § 13-6-11 in equity cases. *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 137 (4) (327 SE2d 192) (1985) and cases cited.

(b) Only stubborn litigiousness, and neither of the other two statutory grounds under OCGA § 13-6-11, i.e., bad faith nor unnecessary trouble and expense, formed the foundation for the award. Thus, if there were a bona fide controversy, then the trial court could not conclude that defendant was stubbornly litigious and awards for the expenses of litigation would be unjustified. "The key to the test is whether there is a 'bona fide controversy.' " *Franchise Enterprises v. Ridgeway*, 157 Ga. App. 458, 460 (2) (278 SE2d 33) (1981). Such an award is not generally allowed under our system and is regarded as an additional amount of damages for the victor. See *C & S Nat. Bank*, supra at 138 (4).

Wickes alleged that the proposed Building J would violate two easements, one for parking and one for ingress and egress, or access. The trial court denied summary judgment because there were issues of fact. It intimated that, for example, if the building accommodated pass-through traffic, then there would be no obstruction of pedestrians; they would simply walk through the building rather than across the parking lot. Candler made architectural modifications accordingly after the summary judgment hearing. In defendant's favor, there was some evidence that no bars to access would result and also that at most only small percentages of shoppers would be affected.

The court ultimately concluded that the building would not violate the parking easement. A bona fide dispute as to part of a claim precludes a finding of stubborn litigiousness. *Gaston v. Mullins*, 168 Ga. App. 371, 372 (1) (309 SE2d 166) (1983). That is a very practical principle, for were it otherwise, the task of separating out the litigation expense relating exclusively to the points which should have been conceded without lawsuit would itself be costly, time-consuming, and frequently impossible.

Although the court did conclude that the access easement prevented the building's construction as planned, it found that there was no "bad faith" in defending the action because "there was an arguable question of fact" in the defense of the action. Since the court itself recognized, in effect, a bona fide controversy, it could not award to Wilkes the expenses of litigation as an additional measure of damages against Candler. *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218, 222 (2) (308 SE2d 564) (1983). Although it used the term "bad faith" in measuring the conduct of Candler as the suit's defendant, it obviously did not mean the type of bad faith which would support litigation expenses under the statute. The reason is that such

bad faith relates to that which arises out of the transaction upon which the complaint is based. It refers to a time prior to the institution of the suit, not defendant's conduct in defending the case. Id. at 221; *Brannon Enterprises v. Deaton*, 159 Ga. App. 685 (285 SE2d 58) (1981); *Allen v. Brackett*, 165 Ga. App. 415, 421 (3) (301 SE2d 486) (1983). For the same reasons, Wieland is not entitled to the similar award. The circumstances are even more weighty against it. Wieland lost on four of its claims. The court found no violations of their visibility or sewer easement rights, as well as no violation of their parking rights. In addition, the court early on rejected the zoning variance claim against Candler, the City, and the other added parties. Wieland had contended that a 1981 variance which would have allowed the building was unlawfully obtained and unlawfully granted. These were not insignificant resolutions in Candler's favor, as they did not amount to a prohibition against any structure but only one that interfered with access.

Defense against these claims was not only warranted as arguable, it prevailed. It would be peculiar if the law assessed the loser's expenses in this regard against the winner. Although Wieland may argue that it supplemented its trial evidence and revised its claim for expenses in its letter to the court following trial, so as to extract only those related to the access easement issue, that is not evidence even if we were to accept it as otherwise sufficient proof. Damage awards must be supported by trial evidence. See, e.g., *Tri-State Systems v. Village Outlet*, 135 Ga. App. 81, 85 (2) (217 SE2d 399) (1975).

The awards made pursuant to OCGA § 13-6-11 must be reversed. We need not reach the remaining ground regarding sufficiency of the evidence.

### Case No. A89A1911

2. The cross-appeal by the Wieland partners arises from the additional claim raised by amendment to their complaint. They assert that the trial court improperly denied their motion for summary judgment and ruled in Candler's favor that proper governmental authorization was obtained for the proposed construction of Building J, contending (1) that the College Park Board of Zoning Appeals did not make the findings and determinations required by the applicable zoning ordinance; (2) that the purported grant of the variance was invalid because, as interested parties, they were not provided with proper notice; (3) that no authorization was obtained for the actual construction of Building J; and (4) that Candler misrepresented to the Board certain material issues of fact upon which the Board relied in granting the variance.

These objections are immaterial and irrelevant because the vari-

ance complained of related only to a reduction in the number of parking spaces required by the city ordinance on Candler's property. No variance or other special authorization was necessary to proceed with construction of Building J once a building permit was secured, and such a permit was issued on June 2, 1986. The hearing on the parking variance occurred in 1981, and the allowed reduction in the overall number of parking spaces in Candler's shopping center has no bearing on the issue of whether the easement agreement was violated by obstruction of the flow of vehicular and pedestrian traffic between the two properties. Nor have the cross-appellants demonstrated that any damage accrued to them as a result of allowing the parking variance, particularly since Candler did not appeal from the injunction against construction of Building J.

*Judgments reversed in Case Nos. A89A1909 and A89A1910 and affirmed in Case No. A89A1911. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 16, 1990 —
REHEARING DENIED MARCH 29, 1990.

*Smith, Gambrell & Russell, James H. Bratton, Jr., Lisa L. Ballentine, Wood & Meredith, Dwight A. Meredith,* for Wieland.
*Morris, Manning & Martin, Richard P. Reinhart, Gerald L. Pouncey, Jr., David A. Rabin,* for Candler.
*Howard H. Johnston,* for Wickes.