**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 6, 2023**

# In the Court of Appeals of Georgia

A22A1377. BROOKS v. BROOKS.

HODGES, Judge.

This appeal arises from a dispute over what, if any, alimony is owed by appellant Charles R. Brooks ("Charles") to his ex-wife, Vinci C. Brooks ("Vinci"). The superior court granted Vinci's motion to confirm an arbitration award and denied Charles' competing motion to vacate the arbitration award. The order also awarded attorney fees to Vinci pursuant to OCGA § 13-6-11. This Court granted Brooks' application for discretionary review, and this appeal followed. For the reasons that follow, we affirm.

As we review this case, we bear in mind that

> [w]hether a valid and enforceable arbitration agreement exists is a question of law for the court. We therefore review a trial court's order granting or denying a motion to compel arbitration de novo. [Vinci], as

the part[y] seeking arbitration, bear[s] the burden of proving the existence of a valid and enforceable agreement to arbitrate. And the validity of an arbitration agreement is generally governed by state law principles of contract formation.

(Citation omitted.) *Jhun v. Imagine Castle, LLC*, 358 Ga. App. 627 (856 SE2d 24) (2021). Moreover, "[i]n reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous." (Citation omitted.) *Wells v. Wells-Wilson*, 360 Ga. App. 646, 647 (860 SE2d 185) (2021). However, we review the trial court's resolution of questions of law de novo. *Adventure Motorsports Reinsurance, Ltd. v. Interstate Natl. Dealer Svcs.*, 313 Ga. 19, 25 (1) (867 SE2d 115) (2021).

So viewed, the record shows that Charles and Vinci divorced in 2013. In the settlement agreement which was incorporated into their divorce decree, the parties agreed to arbitrate any future disputes which might arise over the calculation of alimony owed by Charles to Vinci. Eventually, the parties disagreed over what, if any, alimony Charles owed once he retired. Charles filed a petition for declaratory judgment in the superior court which sought to have that court resolve the issue of alimony as opposed to an arbitrator. Vinci responded by filing an answer and a

2

counterclaim seeking to compel arbitration. The trial court granted Vinci's motion to dismiss the petition for declaratory judgment and compelled the parties to arbitration.

An arbitration occurred before a senior superior court judge previously chosen by the parties to serve as an arbitrator, but no transcript of this proceeding is in the record. The parties do not dispute, however, that Charles argued that he no longer owed alimony to Vinci once he retired, while Vinci asserted that Charles continued to owe alimony post-retirement. The arbitrator entered an award, discussed in more detail below, which awarded Vinci continued alimony and ordered Charles to pay the arrearage that had accrued since his retirement. The award also ordered Charles to pay Vinci's attorney fees.

Vinci applied to confirm the arbitration award in the superior court, while Charles moved to vacate the award. In Vinci's application, she sought attorney fees pursuant to OCGA § 13-6-11. Following a hearing, the superior court granted Vinci's application to confirm, denied Charles' motion to vacate, made the arbitration award the final judgment, and awarded Vinci attorney fees for the preparation and prosecution of the application to confirm. Charles applied for discretionary review of that order, which this Court granted, and he timely appealed.

1. Charles first argues that the trial court erred by compelling arbitration. We are not persuaded.

At the outset, Vinci contends that this issue was not properly preserved because Charles failed to directly appeal the order compelling arbitration. We disagree. "The grant of an application to compel arbitration is not directly appealable pursuant to OCGA § 5-6-34 (a) (4), but is instead an interlocutory matter reviewable pursuant to OCGA § 5-6-34 (b)." (Citation and punctuation omitted.) *Goshayeshi v. Mehrabian*, 232 Ga. App. 81 (501 SE2d 265) (1998). Here, instead of seeking an interlocutory review, Charles participated in the arbitration and filed a petition for discretionary review once the arbitration award was confirmed. Once his petition was granted and he timely appealed, the procedure in this case was the same as any other appeal. OCGA § 5-6-35 (g). At that point,

> all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.

OCGA § 5-6-34 (d).

Thus, we turn to the merits of Charles' enumeration. The arbitration provision at issue is contained within the parties' settlement agreement which was incorporated into their divorce decree.

> [A] settlement agreement incorporated into a divorce decree is construed according to the same rules that govern contractual interpretation in general, with the cardinal rule being to ascertain the intention of the parties. Where any contractual term of a settlement agreement incorporated into a decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced.

(Citation omitted.) *Coppedge v. Coppedge*, 298 Ga. 494, 496-497 (1) (783 SE2d 94) (2016). More specifically,

> arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination. The construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction.

(Citation and punctuation omitted.) *South Point Retail Partners v. North American Properties Atlanta*, 304 Ga. App. 419, 421 (1) (696 SE2d 136) (2010).

5

As to the scope of what issues are arbitrable, the arbitration clause the parties agreed to provides:

> *Binding Arbitration; In the event that the parties disagree on the calculation of alimony to be paid by [Charles] to [Vinci] each year* beginning on February 15, then and in that event, the parties will submit the issue to binding arbitration. The arbitration will be conclusive and binding upon the parties in any court of competent jurisdiction. (Emphasis supplied.)

Charles argues that this dispute arises not from a disagreement about the calculation of alimony, but rather concerns resolution of an ambiguity in the portion of the divorce decree providing for alimony. Specifically, Charles claims an ambiguity exists in the document as to how much alimony he owes following his retirement. The divorce decree provides:

> 1. Alimony

> (a) *While [Charles] is employed by INPO*: Alimony will be paid by [Charles] to [Vinci] in an amount equal to fifty (50%) percent of [Charles'] W-2 earnings from INPO, less federal income tax withholding, state income tax withholding, Social Security, and Medicare.

(b) *Upon retirement by [Charles] from INPO*: Alimony will be paid by [Charles] to [Vinci] in an amount equal to fifty (50%) percent of [Charles'] W-2 earnings less federal income tax withholding, state income tax withholding, Social Security, and Medicare, plus 32.5% of all Form 1099 and Schedule K-1 income.

In his brief, Charles frames the dispute as whether he is "required to pay alimony to [Vinci] at all since retiring from his employment with INPO, not how much does he owe her now that he is retired." Charles' attempt to create a distinction between the legal claim he seeks to be addressed and the one the parties agreed to arbitrate is mere semantics, not substance. For reasons that will be discussed more fully below, Charles contends that he owes no alimony to Vinci post-retirement, while Vinci contends he owes a significant amount of alimony post-retirement. This is, indeed, a disagreement about the calculation of alimony. Pursuant to the plain language of the arbitration agreement, the claim is arbitrable and the trial court did not err in compelling arbitration.

2. Charles next contends that the trial court erred in confirming the arbitration award. Again, we disagree.

As our Supreme Court has recently stated

7

Georgia's Arbitration Code was designed to preserve and ensure the efficacy and expediency of arbitration awards. A primary advantage of arbitration is the expeditious and final resolution of disputes by means that circumvent the time and expense associated with civil litigation. Arbitration is a unique procedure that exists in Georgia due to legislative fiat, and it is conducted in accordance with the rules established by the legislature. By agreeing to arbitrate grievances, contracting parties express their intent to by-pass the judicial system and thus avoid potential delays at the trial and appellate levels.

(Citations and punctuation omitted.) *Adventure Motorsports*, 313 Ga. at 25 (1). For that reason

[t]he scope of a court's review of an arbitration award is among the narrowest known to the law. Under the Arbitration Code, the grounds for vacating an arbitration award are severely limited. The Code sets out five exclusive grounds for vacating an award:

(1) Corruption, fraud, or misconduct in procuring the award;

(2) Partiality of an arbitrator appointed as a neutral;

(3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;

(4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or

(5) The arbitrator's manifest disregard of the law.

OCGA § 9-9-13 (b). Unless one of the statutory grounds for vacating an award as set forth in OCGA § 9-9-13 (b) is found to exist, a trial court in reviewing an award is bound to confirm it.

(Citations and punctuation omitted.) *Magnum Contracting v. Century Communities of Ga.*, 362 Ga. App. 755, 759 (A) (870 SE2d 75) (2022). Charles raises two arguments in support of his position that the trial court erred in confirming the arbitration award: the evidence did not support the award and the arbitrator overstepped his authority. We will address them in turn.

   *(a) The Evidence*

Charles argues that the arbitrator ignored the intention of the parties in interpreting the divorce decree because the award allows Vinci to "double dip" into his pension. Specifically, Section 4 (a) of the settlement agreement, incorporated into the divorce decree, provides that "[t]he INPO Pension arises out of [Charles'] employment and will be divided 50/50 between [Charles] and [Vinci] effective

9

[December 10, 2013] via Qualified Domestic Relations Order. . . ." A Form 1099 is issued for Charles' pension payments, however, and pursuant to Section 1 (b) of the settlement agreement, following his retirement, Vinci is entitled to 32.5 percent of all Form 1099 income. According to Charles, awarding Vinci 82.5 percent of his pension income leaves him with very little remaining income while providing Vinci with considerable income, which he states was clearly not the intention of the parties.

As argued, however, Charles does not actually assert a statutory basis for vacating the arbitration award because sufficiency of the evidence is not a ground for vacatur.

> [C]ourts cannot inquire into the merits of an arbitrable controversy; arbitrators are free to award on the basis of broad principles of fairness and equity; and an arbitrator need not make findings or state the reasons in support of the award. When reviewing a motion to vacate, appellate courts cannot make determinations as to the sufficiency of the evidence, as such judicial intervention would only frustrate the purpose of arbitration. The prohibition against considering the sufficiency of the evidence as grounds for vacating an arbitration award is unconditional. Therefore, a reviewing court is prohibited from weighing the evidence submitted before the arbitrator, regardless of whether the court believes there to be sufficient evidence, or even any evidence, to support the award.

(Citation and punctuation omitted.) *Wells*, 360 Ga. App. at 647.

To the extent we were to construe Charles' argument to be that the arbitrator manifestly disregarded the law, such an argument also fails. With regard to manifest disregard of the law, the

> disregard must be both evident and intentional. That is, to manifestly disregard the law, one must be conscious of the law and deliberately ignore it. Therefore, to prove that a manifest disregard of the law has occurred, a party wishing to have an arbitration award vacated must provide evidence of record that, not only was the correct law communicated to an arbitrator, but that the arbitrator intentionally and knowingly chose to ignore that law despite the fact that it was correct.

> In the arbitration context, the concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts. This showing is "an extremely difficult one to make" and requires evidence in the transcript of the arbitration proceeding (if the hearing is transcribed) or in the arbitrator's written findings (if made) or other "concrete evidence" in the record that would indicate "a specific intent" of the arbitrator to disregard the appropriate law. For example, if an arbitration award were to make an explicit recital of the winning party's argument that the correct law should be ignored rather than followed, there would be sufficiently clear evidence on the face of the award showing the arbitrator's intent to purposefully disregard applicable law to vacate the award.

11

On the other hand, an arbitrator who incorrectly interprets the law has not manifestly disregarded it. The arbitrator has simply made a legal mistake. Mere error in law or failure on the part of the arbitrator to understand or apply the law does not amount to deliberately disregarding the law in order to reach the result the arbitrator reached.

(Citations and punctuation omitted.) *Adventure Motorsports*, 313 Ga. at 26-27 (1). Here, we do not need to consider if the arbitrator made a legal mistake, because Charles has not demonstrated manifest disregard of the law as required. There is no transcript of the arbitration proceedings in the record and there is nothing in the arbitration award on which this Court could rely to find manifest disregard of the law. Accordingly, this provides no basis for vacating the arbitration award.

### (b) Overstepping

In this portion of his enumeration, Charles argues that the arbitrator overstepped his authority in two regards: by calculating and awarding an arrearage amount and setting a deadline for it to be paid; and by awarding attorney fees to Vinci.

### (i) Arrearage

The arbitrator determined that Vinci was owed alimony after Charles' retirement, calculated how much alimony was past due, and ordered Charles to pay

the arrearage within 30 days. Charles argues that the arbitrator overstepped his authority by awarding an arrearage and scheduling its payment because the arbitrator's authority was limited to mere calculation of alimony due. He contends that determining an arrearage was tantamount to a finding of contempt without the requisite finding of wilfulness on his part. We are not persuaded.

"'Overstepping,' like the other grounds for vacating arbitration awards, is very limited in scope. 'Overstepping' has been described as addressing issues not properly before the arbitrator." (Citation and punctuation omitted.) *A&M Hospitalities v. Alimchandani*, 359 Ga. App. 271, 279 (3) (856 SE2d 704) (2021). We do not find that the arbitrator overstepped in giving effect to his alimony calculation by awarding past due sums.

> In the context of remedies given by an arbitrator, the Supreme Court of Georgia has stated: An arbitrator has inherent power to fashion a remedy as long as the award draws its essence from the contract or statute. Additionally, the Georgia Arbitration Code specifically states that merely because the relief granted in the arbitration award could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm an award.

(Citations, punctuation, and emphasis omitted.) *Wells*, 360 Ga. App. at 666 (5) (a). We find that establishing the amount of and requiring timely payment of past due

13

alimony sums owed is a remedy which draws its essence from the settlement agreement. Moreover, even assuming without deciding that *a trial court* would be required to first make a contempt finding, our law is clear that an arbitrator may grant relief that a trial court would not be allowed to grant. We find that the arbitrator did not overstep his authority in this regard.

*(ii) Attorney Fees*

Here, the settlement agreement clearly permitted the arbitrator to award attorney fees. Specifically, the settlement agreement provides that

> [i]n the event of an actual arbitration resulting in a written award signed by the arbitrator, the prevailing party will be entitled to recover the attorney fees and expenses of litigation incurred in prosecuting or defending the case in arbitration, plus all fees paid to the arbitrator. *This right to recover fees by the prevailing party will be adjudicated by the arbitrator after the entry of a written arbitration award.* (Emphasis supplied.)

Charles does not dispute that the issue of attorney fees was properly before the arbitrator. Instead, he argues that the arbitrator overstepped his authority by awarding attorney fees in the same order in which he decided the merits because the settlement agreement required such fees to be adjudicated *after* an award on the merits. He also takes issue with the manner in which Vinci's counsel proved attorney fees and a

14

purported lack of a hearing on the matter. On appeal, Charles contends his counsel objected to the consideration of fees at the same time as the merits, but there is no transcript of the arbitration hearing in the record. There are, however, email exchanges between the parties and the arbitrator. In those exchanges, Charles' counsel took issue with the inclusion of fees concerning the motions practice in the trial court prior to arbitration, but the email indicated no complaint about the issue of fees being decided in a single order including the merits. Indeed, Charles' counsel specifically stated that if those particular fees were removed, he had "no objection to the form of the proposed Arbitration Award, but obviously [his] client was not approving the substantive Findings and Award sections." Vacatur of an arbitration award is available only "if the court finds that the rights of [the moving] party *were prejudiced by*" one of the statutory grounds. (Emphasis supplied.) OCGA § 9-9-13 (b). Even assuming without deciding that the arbitrator overstepped by not bifurcating the determination on the merits from fees, Charles cannot show prejudice given that he either acquiesced to the procedure or, due to the absence of a transcript, failed to demonstrate that he objected to it.

3. Lastly, Charles contends that the trial court erred in awarding Vinci attorney fees pursuant to OCGA § 13-6-11. We find that he has failed to show reversible error.

OCGA § 13-6-11 provides that "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Here, the trial court awarded Vinci attorney fees pursuant to OCGA § 13-6-11 for the "preparation and prosecution of her application" to confirm the arbitration award, but did not specify which statutory basis it relied on to justify the award.

Charles' sole argument that these attorney fees were impermissible is on the basis that OCGA § 13-6-11 only authorizes fees in contract actions and that, although the arbitration agreement was contained in a settlement agreement, the agreement was incorporated into the divorce decree, and thus this case is not a breach of contract action. Charles' premise is fundamentally flawed, however, because OCGA § 13-6-11 is not only available in contract cases. See, e.g., *Candler v. Wickes Lumber Co.*, 195 Ga. App. 239, 242 (1) (a) (393 SE2d 99) (1990) ("Attorney fees are allowable under OCGA § 13-6-11 in equity cases."); *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. 744, 746 (4) (320 SE2d 868) (1984) ("Expenses of litigation are recoverable under OCGA § 13-6-11 in both tort and contract actions. The plaintiff need not show

16

that all three provisions of the statute are present, but only that one of the three conditions exists."). Charles has not asserted any other reason OCGA § 13-6-11 attorney fees should not be available in an arbitration confirmation proceeding generally or on the facts of this case specifically, and it would be inappropriate for us to consider any basis for this enumeration other than the one advanced by Charles. See *Harmon v. Innomed Techs., Inc*., 309 Ga. App. 265, 270 (1) (b) (709 SE2d 888) (2011) ("We will not speculate or make arguments on [Charles'] behalf; to do so would improperly change this court's role from disinterested decision-maker to appellate advocate.") (citation omitted).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*